MICHAEL RAMOS, ADMINISTRATOR (ESTATE OF EDWARD RAMOS) *v.* TOWN OF BRANFORD ET AL.
(AC 20449)

Dranginis, Flynn and Shea, Js.

Argued March 2—officially released June 12, 2001

*Kristen S. Rufo*, with whom, on the brief, was *George H. Romania*, for the appellant (plaintiff).

*Kevin C. Shea*, with whom, on the brief, was *Patrick M. Noonan*, for the appellees (named defendant et al.).

*Opinion*

FLYNN, J. The plaintiff, Michael Ramos, administrator of the estate of the decedent, Edward Ramos,[1] appeals from the summary judgment rendered in favor of the defendant town of Branford (town) and the defendant Peter Buonome.[2] The plaintiff brought this action against the defendants, claiming that Buonome, as chief of the Branford fire department and the town's fire marshal, knew or should have known that his reckless conduct was substantially certain to cause the death of the decedent.

---

[1] We note that Yvonne Ramos subsequently replaced Michael Ramos as the administrator of the estate of Edward Ramos.

[2] The plaintiff also named Richard D. Patterson, George Brencher III and Gene Bontatibus, doing business as Floors and More, as defendants. The plaintiff subsequently withdrew the complaint against them on March 17, 1999. Therefore, we refer to the town and Buonome as the defendants in this appeal.

On appeal, the plaintiff claims that the trial court improperly determined that (1) a genuine issue of material fact does not exist as to whether Buonome's conduct was wilful and was committed with the knowledge that the death of the plaintiff's decedent was substantially certain to result, (2) the affidavit and certain documents offered in support of the plaintiff's opposition to the defendants' motion for summary judgment are inadmissible, and (3) the substantial certainty exception to the exclusivity provision, General Statutes § 31-284 (a),[3] of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., is limited to the industrial workplace. We affirm the judgment of the trial court.

The dispositive issue on appeal is whether the court improperly determined that no genuine issue of any material fact exists as to whether Buonome intentionally acted with the knowledge that an injury to the plaintiff's decedent was substantially certain to result. We conclude that the court properly determined that no genuine issue of material fact exists. Because the court considered all of the evidence offered by the plaintiff in deciding as it did, we decline to address the plaintiff's claims about the court's having ruled inadmissible certain documents that were proffered in opposition to the summary judgment motion. Furthermore, we reserve for another day the issue of whether the substantial certainty test should be limited to the context of the industrial workplace.

---

[3] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ."

The following facts and procedural history are relevant to this appeal. The plaintiff's decedent was a volunteer firefighter with the Branford fire department who died fighting a blaze on the evening of November 28, 1996. In count one of an amended complaint dated January 21, 1998, the plaintiff alleged that Buonome recklessly failed to promulgate, implement and enforce policies with respect to firefighting procedures and safety policies,[4] and that Buonome knew or should have known that serious injury or death to Branford fire department personnel, including the plaintiff's decedent, was substantially certain to result. In count two, the plaintiff alleged that, pursuant to General Statutes § 29-305,[5] Buonome had a mandatory duty to conduct annual inspections of commercial properties, including

[4] Count one of the amended complaint alleged in relevant part: "For a substantial period of time prior to said fire, the defendant recklessly failed to promulgate, implement and enforce policies with respect to matters including, but not limited, to:

"a. Firefighting training;

"b. Fire ground procedures;

"c. Prefire planning of commercial buildings;

"d. Fire ground emergency rescue procedures;

"e. The use of safety equipment;

"f. The use of self-contained breathing apparatus;

"g. The accountability of department personnel, including Edward Ramos, on the fire ground;

"h. Effective fire ground radio communications and a dedicated fire ground channel; and

"i. The use of a fire ground management system."

[5] General Statutes § 29-305 provides in relevant part: "Each local fire marshal . . . for the purpose of satisfying themselves that all pertinent statutes and regulations are complied with, may inspect in the interests of public safety all buildings and facilities of public service, all buildings and facilities used for manufacturing and all occupancies regulated by the Fire Safety Code within their respective jurisdictions. Each local fire marshal shall inspect or cause to be inspected, at least once each calendar year and as often as may be necessary in the interests of public safety, all buildings and facilities of public service and all occupancies regulated by the Fire Safety Code within his jurisdiction . . . only for the purpose of determining whether the requirements specified in said code relative to smoke detection and warning equipment have been satisfied. . . ."

the commercial building at 43 School Ground Road in which the plaintiff's decedent died. The plaintiff further alleged that Buonome's failure to conduct those inspections constituted a reckless disregard for the health and safety of department personnel, including the decedent, and that Buonome knew or should have known that serious injury or death to department personnel, including the decedent, would result.

The defendants responded by filing a motion to strike counts one and two on the ground that they were barred by the exclusivity provision of the act.[6] The plaintiff objected, and the court thereafter denied the defendants' motion. The court reasoned that the defense must be raised by pleading a special defense.

The defendants then filed an answer and special defenses, including the defense of the exclusivity of the act. The defendants subsequently filed a motion for summary judgment on the same grounds as those set forth in their earlier motion to strike. The plaintiff objected and argued that a genuine issue of material fact exists as to whether Buonome's conduct falls within the substantial certainty standard of the exception to the act's exclusivity.[7] At the hearing on the defendants' motion for summary judgment, the court expressed concern about the dearth of the parties' factual submissions in support of their respective positions.[8] There-

---

[6] The defendants also moved to strike counts one and two on the ground that they were barred by the doctrine of governmental immunity. The defendants also sought to strike count two on the ground that § 29-305 does not provide a private cause of action against a local fire marshal.

[7] Pursuant to *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994) (*Suarez I*), "an individual may bring a civil action for damages against his employer for injuries sustained at work where such injuries were caused by work conditions intentionally created by the employer which made the injuries substantially certain to occur . . . ." (Internal quotation marks omitted.) That cause of action is available in addition to the remedies provided by the act.

[8] In support of their motion for summary judgment, the defendants submitted an affidavit by Buonome. The plaintiff offered the counteraffidavit of

after, the court ordered the parties to submit additional affidavits, documents and memoranda of law in support of or in opposition to the motion for summary judgment.

In its memorandum of decision, the court granted the defendants' motion for summary judgment on several grounds, including the ground that the exclusivity provision of the act bars the plaintiff's action against the defendants. The court determined that, as a matter of law, the substantial certainty test, as set forth in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) (*Suarez I*); see footnote 7; is not designed to deal with the inherently dangerous work environment of the firefighter because "firefighters will *always* face a cognizable risk of injury or death. This risk might be somewhat reduced by appropriate safety and inspection procedures, but it will never be reduced to anything approaching zero—no matter what the employer does." (Emphasis in original.) The court then concluded that "[t]he substantial certainty test simply cannot be sensibly applied to the facts at hand."

Notwithstanding that ruling, the court next considered whether the substantial certainty standard applies to the facts of this case. Before reaching the merits of the claim, the court ruled that several of the documents proffered by the plaintiff were inadmissible for various reasons.[9] "In view of the gravity of the case," however,

---

Samuel A. Maglione, an expert on fire loss and fire code analysis, whom the plaintiff expected to call as a witness at trial.

[9] The court found that the affidavit of Samuel A. Maglione, the plaintiff's proffered expert on fire loss and fire code analysis, did not meet the threshold requirements of Practice Book § 17-46 and the Connecticut Code of Evidence § 7-2, because it "is sufficiently devoid of facts establishing personal knowledge [such] that it cannot be said to be reliable." The court found the affidavit of George H. Romania, the plaintiff's counsel, to be "a mere conduit for the documents appended thereto" and an inappropriate affidavit by a party's counsel who asserts no personal knowledge. The court also ruled that a fire investigation report by the National Fire Protection Association concerning the November 28, 1996 fire was a hearsay document that was not covered by the hearsay exception for public records and reports because there was no evidence that it was a report made by a public official or

the court further concluded that "even if the substantial certainty test were applicable to the present case and even if I were to treat the plaintiff's submissions as admissible in their entirety, the defendants' motion for summary judgment must be granted" because, although evidence of "the defendants' asserted failure to promulgate, implement and enforce certain safety policies and conduct inspections . . . [is] sufficient to show negligence, [it does] not establish the facts required by the substantial certainty test." This appeal followed.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . ." (Internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 698, 767 A.2d 1232 (2001).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must

agency. Last, the court ruled that a citation to the town from the state department of labor's division of occupational safety and health was not a report as Romania identified it in his affidavit, but rather was "an accusation that the town has a right to contest."

decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 699.

The plaintiff proceeded in the trial court exclusively on the substantial certainty standard of the intentional tort exception to the act, and alleged that Buonome had recklessly failed to promulgate, implement and enforce policies with respect to matters including, but not limited to, firefighter training, fire ground emergency rescue procedures, prefire planning of commercial buildings, effective fire ground radio communications and a dedicated fire ground channel, and the use of safety equipment, self-contained breathing apparatus and a fire ground management system. Therefore, the court's inquiry was limited to determining if there were any genuine issues of material fact as to whether Buonome's alleged acts were undertaken with the intent to cause injury and whether Buonome was aware that an injury was substantially certain to result from his acts.

In *Jett* v. *Dunlap*, 179 Conn. 215, 219, 425 A.2d 1263 (1979), our Supreme Court recognized a narrow exception to the exclusivity of the act for intentional torts that an employer has committed upon an employee. In *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 100, 491 A.2d 368 (1985), the court expressly declined, however, to extend judicially the intentional tort exception to include employee injuries resulting from an employer's intentional, wilful or reckless violation of safety standards established pursuant to federal and state laws.[10]

[10] In *Mingachos*, the plaintiff's decedent died from injuries he sustained in a workplace explosion. The plaintiff brought an action against his decedent's employer on the theory that the employer wilfully and recklessly violated various state and federal safety regulations, thereby creating a hazardous condition, and intentionally and wilfully caused the injuries and subsequent death of the decedent. *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 95.

See also *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 536, 494 A.2d 555 (1985); *Ray* v. *Schneider*, 16 Conn. App. 660, 673, 548 A.2d 461, cert. denied, 209 Conn. 822, 551 A.2d 756 (1988).

Next, in *Suarez I*, supra, 229 Conn. 105, our Supreme Court explicated its earlier holding in *Mingachos* and extended the intentional tort exception to include those factual situations in which an employee's injuries "were caused by work conditions intentionally created by the employer which made the injuries substantially certain to occur." In so deciding, the court expressed the concern that "the intentional tort test, i.e., whether the employer intended the specific injury . . . allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker. *Beauchamp* v. *Dow Chemical Co.*, 427 Mich. 1, 25, 398 N.W.2d 882 (1986). Prohibiting a civil action in such a case would allow a corporation to cost-out an investment decision to kill workers. *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St. 2d 608, 617, 433 N.E.2d 572 [(Celebrezze, C. J., concurring), cert. denied, 459 U.S. 857, 103 S. Ct. 127, 74 L. Ed. 2d 110 (1982)]. The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself. *Gulden* v. *Crown Zellerbach Corp.*, 890 F.2d 195, 197 (9th Cir. 1989)." (Internal quotation marks omitted.) *Suarez I*, supra, 109–10.

It is important to note that the substantial certainty standard is a subset of the intentional tort exception. See A. Sevarino, Connecticut Workers' Compensation After Reforms (2d Ed. 1999) § 5.31, p. 393. Whereas the intentional tort test requires that both the act producing

the injury and the specific injury to the employee must be intentional; *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 102; the substantial certainty standard requires a showing that the act producing the injury was intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct. *Suarez I*, supra, 229 Conn. 109–10.

We note that while *Suarez I* has liberalized the intentional tort standard to the extent that an injured employee may bring an action against his employer where the evidence is sufficient for a trier of fact to infer that the employer believed the injury was substantially certain to follow from his acts or conduct, the plaintiff still must prove that the employer's conduct was intentional. "[I]ntent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. 1 Restatement (Second), Torts § 8A (1965)." (Internal quotation marks omitted.) *Suarez I*, supra, 229 Conn. 108. "[Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." (Internal quotation marks omitted.) Id., 109.

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. 6 A. Larson & L. Larson, Workmen's Compensation (1997) § 68.13, pp. 13-12 through 13-13. What is being tested is not the degree of gravity of the employ-

er's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 279, 698 A.2d 838 (1997) (*Suarez II*).

With those principles in mind, we now consider the plaintiff's claim that the court improperly determined that the proffered evidence demonstrated an absence of a genuine issue of any material fact.[11] The defendants offered an affidavit by Buonome, dated March 8, 1999, in support of their motion for summary judgment. Buonome attested therein that he "had no knowledge or information that a fire was substantially certain to or would occur on [November 28, 1996] in the town of Branford" or at the premises located at 43 School Ground Road. He further attested that he "had no knowledge or information at any time prior to the November 28, 1996 fire that Edward Ramos' death was substantially certain to occur at any time, at any location, or as a result of any alleged act or omission of mine." Last, Buonome attested that he "never undertook or omitted any act or engaged in any conduct that was intentionally designed to cause injury to or the death of Edward Ramos."

The plaintiff responded with a counteraffidavit by Samuel A. Maglione, an expert in performing fire loss and fire code analysis, who attested that fire departments nationwide use accountability systems, train their personnel in the use of self-contained breathing apparatus and comply with statutorily required fire inspections of commercial buildings. He further attested: "It is my expert opinion that, given . . . Buonome's knowledge and expertise in firefighting procedures . . . Buonome's failure to properly train and

---

[11] Because the court assumed that all of the proffered evidence was admissible, we, too, examine all of the evidence in determining whether the court properly decided as it did.

certify Edward Ramos in the use of a self-contained breathing apparatus . . . and [his] failure to implement an accountability system . . . in addition to Buonome's failure to conduct statutorily mandated fire inspections of commercial buildings were intentional acts necessarily committed with knowledge that the injury to or death of a firefighter, including Edward Ramos, was substantially certain to result."[12]

---

[12] In response to the court's request for further evidence, the defendants provided a supplemental affidavit dated December 6, 1999, in which Buonome attested that if an annual inspection under § 29-305 had been performed on the building in which the decedent died, none of the conditions identified in the second count of the plaintiff's amended complaint would have been reported because neither the fire code nor any statute or regulation required automatic sprinklers or prohibited a wood truss construction of the building. He further stated that "[a]t all relevant times, a prefire plan was not required for the premises involved in this fire under any pertinent statute or regulation. At all relevant times, it is and was the policy and practice of the Branford fire department to prepare prefire plans only for major target hazard premises throughout the town, such as schools and health care facilities." Regarding an accountability system for fire ground operations, Buonome stated that he directed fire department personnel to improve the existing accountability system approximately one and one-half years prior to the plaintiff's having brought this action and that pursuant to his direction, "an improved accountability system was developed at that time and utilized up through and including the date of this fire."

The defendants also submitted relevant sections of the standard operating procedures for the Branford fire department that were in effect at the time of the fire, which included departmental policies and instructions on protective clothing, a protective clothing inspection program, fire scene communication policies, national fire incident reporting system, fire origin and cause analysis, safety procedures and tactical guidelines for fire ground safety, liquified petroleum gas emergencies and self-contained breathing apparatus, including personal distress devices. Additionally, the defendants submitted a copy of a fire investigation report by the National Fire Protection Association, which determined that all of the firefighters who entered the building were at risk of being trapped and killed, and attributed the following significant factors to the death of the plaintiff's decedent: (1) the absence of an automatic sprinkler protection in the building, (2) the lack of a prefire plan or other information regarding the building's roof structure and materials, and (3) ineffective verbal communication on the fire ground. The National Fire Protection Association also attributed the following factors as detractors from the rescue of the firefighters who were trapped in the burning building and the efficiency of the fire ground operations that were

In response to the court's request for additional evidence, the plaintiff submitted, inter alia, the affidavit of his counsel, George H. Romania. Without deciding whether the affidavit, which was offered to explain the purpose of the documents appended thereto,[13] was procedurally proper; see *Suarez I*, supra, 229 Conn. 108; we note that the affidavit states that a fire investigation report done by the National Fire Protection Association (NFPA) was offered to show that the Branford fire department had failed to comply with specific NFPA standards and with standards of the federal Occupational Health and Safety Act of 1970 (OSHA), 29 U.S.C. § 651 et seq., concerning personal protective clothing and equipment, personnel certifications, communication problems at the fire scene and the lack of a ground accountability program. The affidavit further states that a citation to the town from the state department of labor's division of occupational safety and health was offered to show that the Branford fire department had failed to comply with specific OSHA standards including, among other violations, the failure to have a ground accountability program in place. The plaintiff offered additional documentation for the purpose of further substantiating the alleged OSHA violations.

in place: (1) ineffective use of an incident management system and no formal firefighter accountability system, (2) the lack of a rapid intervention crew and the absence of a standard operating procedure thereon, (3) the lack of a dedicated fire ground channel and (4) ineffective radio communication.

[13] The plaintiff attached the following documents to the Romania affidavit: (1) a copy of a fire investigation report by the National Fire Protection Association; (2) a copy of a citation to the town from the state department of labor's division of occupational safety and health; (3) information about personnel training and Edward Ramos' emergency medical technician certification, which was taken from the records of the Branford fire department; (4) minutes from the January 25, 1996 monthly meeting of the Branford fire department board of fire commissioners; (5) memo of the Branford fire department training division, dated May 15, 1996; (6) memo from the Branford professional firefighters Local 2533 to the deputy chiefs and operators; (7) memo from the Branford fire department to Buonome dated July 11, 1996; (8) Branford fire department memo dated July 13, 1996; and (9) Branford fire department records concerning training of volunteer firefighters.

As previously discussed, the intentional tort exception, as a matter of law, does not encompass injuries to employees resulting from an employer's intentional, wilful or reckless violations of safety standards established pursuant to federal and state laws without a conscious and deliberate intent directed to the purpose of inflicting an injury. *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 100; see *Suarez II*, supra, 242 Conn. 279. Although the plaintiff in the present case alleged that the reckless conduct of his decedent's employer caused the decedent's death; compare *Suarez I*, 229 Conn. 101 and 107 (complaint alleged employee's injuries caused by employer's policy requiring employees to clean still operating machinery by hand); the substance of his claims is that the defendants violated various OSHA, statutory and NFPA safety standards. Here, there is no evidence in the record that the defendants' alleged violation of regulations and safety standards was committed with the purpose of causing injury.

We recently rejected an argument similar to that proffered by the plaintiff in this case. In *Melanson* v. *West Hartford*, 61 Conn. App. 683, 689, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001), the plaintiff, an injured police officer, argued that the failure of his employer, the West Hartford police department, to staff, train, manage and supervise employees adequately, despite warnings that its employees were at risk, gave rise to an inference that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur. In that case, the plaintiff was accidentally shot by a fellow officer while executing a search warrant. We upheld the trial court's granting of the defendant's motion to strike, which had the effect of rendering judgment in favor of the employer because the employer's failure to implement such training and safety programs did not provide a factual basis for a finding that the employer knew that

the plaintiff's injury was substantially certain to occur. Id. We concluded that the "[f]ailure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes personal injury." Id. & n.7.

Unlike the situation in *Suarez I*, there is no evidence in this case that the employer required the plaintiff's decedent to conduct himself in a manner that would "support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) *Suarez I*, supra, 229 Conn. 110. In *Suarez I*, our Supreme Court reversed our decision upholding the trial court's granting of summary judgment in favor of the defendant where the plaintiff offered evidence showing that the employer required him to use his hands to clean machinery in operation rather than by using a vacuum after the machinery was shut off. The court concluded that "a jury could reasonably infer . . . that the defendant's conduct constituted more than a mere failure to provide appropriate safety or protective measures, and that the plaintiff's injury was the inevitable and known result of the actions required of him by the defendant." Id., 111. In contrast, the misconduct of which the plaintiff complains in this case consists of various OSHA and safety standard violations. Without a showing that the employer's violations of safety regulations were committed with a conscious and deliberate intent directed to the purpose of inflicting an injury; see *Suarez II*, supra, 242 Conn. 279; "[a] wrongful failure to act to prevent injury is not the equivalent of an intention to cause injury." *Melanson* v. *West Hartford*, supra, 61 Conn. App. 689 n.6.

Therefore, although those facts may be in dispute, they do not present genuine issues of any material facts. We conclude that the court properly determined that

no genuine issue of material fact existed and that the defendant was entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.