[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Todd Arnone is the administrator of the estate of his brother Craig Arnone, who died tragically in the course of fighting a fire while on duty as a volunteer fireman with the Somers Volunteer Fire Department on December 8, 1996. The plaintiff has brought an action against Connecticut Light Power Co., Northeast Utilities Service Company, the utilities allegedly providing electrical service to the area, the Tolland County Mutual Aid Fire Services, Inc., which is the entity allegedly performing dispatch services, the town of Somers and Edward Pagani, the chief, at the time, of the Somers Volunteer Fire Department. The defendant Pagani has moved for summary judgment as to the fifth and sixth counts of the Substitute Revised Complaint, dated February 13, 2001.
The underlying factual scenario is not seriously in dispute. The following facts are garnered from the materials submitted in connection with the motion for summary judgment and are, for the purpose of this CT Page 12567 motion, undisputed. Over the night of December 7 to December 8, 1996, a heavy wet snowfall blanketed the area of Somers, CT. Shortly after midnight on December 8, Pagani, the chief of the volunteer fire department, received a call that a wire was down and arcing in the vicinity of 879 Main Street in Somers. While on his way to the scene, he received information that the house at 879 Main Street was burning. He called for a response from the department. Shortly after he arrived, there was a large electrical explosion on the premises; wires continued to hum and crackle. Pagani requested the dispatcher to notify CLP, the electric utility servicing the area, to cut the power. He never received verification that CLP had done anything regarding the power. After firefighters had arrived there was a second explosion, after which there was no humming or crackling and all the lights in the neighborhood were dark. Pagani believed that the power was not operative at the premises at this point. Firefighters apparently brushed by a wire hanging by the front entrance, and Pagani saw no reaction when snow fell on any of the wires in the area
Firefighters fought the fire, at least partly under the direction of Pagani,[1] and brought it more or less under control. Firefighters went in and out of the house, ventilated the premises and tended to hot spots. Apparently no people had been inside the house at the time the fire started. As Pagani was turning back toward his truck, he heard another explosion. The deceased Craig Arnone, who was one of the volunteers who had responded to the fire, was lying on the ground. Having apparently contacted the wire hanging by the door, he had received a fatal infusion of current.
Pagani had previously purchased a "hot stick", which was a device which reportedly could detect the presence of electrical current. The hot stick was in a truck at the scene, but was not used. The hot stick, though purchased by Pagani, was never used by the department, as the use had never been approved, nor had there been training in the use of the device.
Pagani stated, and there is no reason to disbelieve, that he had no intention to injure Arnone in any way, and that he thought that the power was out of service before he ordered people to fight the fire.
On these facts, the defendant Pagani seeks summary judgment in his favor as to counts five and six. Summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the resultBarrett v. Southem Connecticut Gas Company, 172 Conn. 362, 378 (1977). CT Page 12568 The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v. Lumberman's Mutual Casualty Company, 214 Conn. 573, 578
(1990). If the moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. it is not enough to state in conclusory fashion that an issue exists. Daily v. New Britain Machine Company, 200 Conn. 562, 568
(1986). The motion should be granted if a verdict would be directed on the same evidence. Batick v. Seymour, 186 Conn. 632, 647 (1984).
The fifth count is entitled "willful and malicious wrongdoing by defendant Pagani." It incorporates by reference allegations from a prior count in which the underlying facts are alleged, and claims that the injuries and death of Arnone were caused by the "willful and malicious conduct" of Pagani by sending firefighters into the house with a downed power line which he knew or should have known was energized, by failing to confirm that the line was deenergized prior to sending firefighters into the building, by failing to use the hot stick, by failing to wait for CLP to arrive and turn off the power, by failing to contact CLP directly, by ordering men to fight the fire even though he had been advised that the line was energized,[2] and by failing to tell the volunteers that the line remained energized.
The sixth count is entitled "violation of civil rights against defendant Edward Pagani, Jr." It alleges that Pagani had the authority to establish working conditions and that he knew of the "working conditions" at the scene of the fire, that is, that the line was energized and that men were sent to fight the fire in close proximity to the line without telling them about it. It alleges that Pagani failed to deal with the situation appropriately by rectifying the dangerous conditions, and that various damages occurred as a result. Paragraphs thirteen and fourteen allege that the actions were taken under color of state law and constituted a deprivation of Arnone's constitutional rights secured by the Fourteenth Amendment, that no state shall deprive a person of life, liberty or property without due process of law and that the cause of action may be brought pursuant to 42 U.S.C. § 1983.
The analysis of the motion for summary judgment insofar as it addresses the fifth count is quite straightforward. Section 7-308 of the General Statutes provides, in pertinent part, that "[i]f a fireman, or, m the case of his death, his dependent has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such fireman or, in the case of his death, his dependent shall have no cause of action against such fellow employee to recover damages for such injury or death unless CT Page 12569 such wrong was wilful and malicious."[3]
Section 7-308 contains other provisions, notably the duty of the municipality to indemnify employees for negligently caused injures to third parties and notice provisions governing actions for indemnification. It is clear, however, that § 7-308 does not bar actions brought by one employee against another where the injury is caused by wilful and malicious conduct.[4] Rowe v. Godeau, 209 Conn. 273,277-79 (1988); see Fraser v. Henninger, 173 Conn. 52 (1977) (construing § 7-465 of the General Statutes, a similar indemnification statute applying to municipal employees in general). The issue for resolution, then, is whether the materials submitted in connection with the motion for summary judgment remove any genuine issue of material fact as to the element of "wilful and malicious conduct". If there is no genuine issue, and a reasonable trier of fact could not find on the evidence presented that Pagani's conduct was wilful and malicious, then summary judgment should be granted. If there is a genuine issue, with reasonable inferences drawn in favor of the plaintiff, then the motion should be denied as to the fifth count.
The term "wilful and malicious" has been defined frequently in our case law
 "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional." Rogers v. Doody, 119 Conn. 532, 534, 178 A. 51 (1935). "A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." Sharkey v. Skilton, 83 Conn. 503, 507-508, 77 A. 950 (1910). The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act.' Alteiri v. Colasso, 168 Conn. 329, 334, 362 A.2d 798
(1975). Markey v. Santangelo, 195 Conn. 76, 77-78, 485 A.2d 1305 (1985)." Id., 102-103.
 Nolan v. Borkowski, 206 Conn. 495, 501 (1988).
CT Page 12570
Recklessness has also been consistently defined in our jurisprudence:
 "Recklessness is a state of consciousness with reference to the consequences of one's acts. Commonwealth v. Pierce, 138 Mass. 165, 175
[1884]. . . . It is "more than negligence, more than gross negligence' Bordonaro v. Senk, 109 Conn. 428, 431, 147 A. 136 [1929]. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." Mooney v. Wabrek, 129 Conn. 302, 308, 27 A.2d 631
(1942). "Wanton misconduct is reckless misconduct. Menzie v. Kalmonowitz, 107 Conn. 197, 199, 139 A. 698
(1928). "It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.' Bordonaro v. Senk,
[supra, 431]." Markey v. Santangelo, 195 Conn. 76, 78, 485 A.2d 1305 (1985); see also Brown v. Branford, 12 Conn. App. 106, 108, 529 A.2d 743 (1987).
 Dubay v. Irish, 207 Conn. 518, 532 (1988).
The facts, as set forth above, cannot reasonably support a conclusion of wilful and malicious conduct. No reasonable trier could find that Pagani intended the injury which occurred, or that there was any design. The most that can be said — with reasonable inferences made in favor of the plaintiff's position — is that Pagani was aware of potential danger and was aware that a course of conduct involving the possibility of contact with live wires was being embarked on. There were choices which could have been made to avoid the tragedy. Our legislature has determined that co-firemen are to be liable only for wilful and malicious conduct, though, and the facts do not rise to that level of malfeasance.
The issue remains, however, whether our Supreme Court has recently changed the law so that a standard of recklessness has been merged into the wilful and malicious standard. In Dubay v. Irish, 207 Conn. 518, 533
(1988), and again in Elliott v. Waterbury, 245 Conn. 385, 415 (1998), our Supreme Court stated that the terms "wilful", "wanton" and "reckless" have been "treated as meaning the same thing." The footnote on which the statement in Dubay, relies as authority goes somewhat further, and suggests that intentional misconduct and reckless misconduct is the same CT Page 12571 thing. Dubay, supra, 533 n. 8. The plaintiff has cited such authority for the proposition that Pagani's conduct in this case can, on the material presented in connection with the motion for summary judgment, constitute "wilful and malicious" conduct.
The two lines of cases are somewhat contradictory[5] but also are roughly contemporaneous. The merging of the definitions in Dubay andElliot, perhaps results at least partly from the contexts: notably, in both cases, the Supreme Court said that under any understanding of the mental state required, the facts in those cases did not meet the standard. The standard was expressed in the following language:
 In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of "a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 415 (1998) (quoting from Dubay v. Irish, supra, 532-33).
In Elliot, the Supreme Court held that the city of Waterbury's act of allowing hunting on land contiguous to a roadway open to the public was as a matter of law not conduct constituting an extreme departure from ordinary care. In Dubay, the Supreme Court held that as a matter of law the actions of a mother in not immediately responding correctly to a drug overdose by a teenage child did not constitute such conduct.
Several cases have made clear the notion that the "wilful and malicious" standard is difficult to meet in emergency situations. InMelanson v. Town of West Hartford, 61 Conn. App. 683, 691-93, the court held that the discharge of a weapon by one police officer in the course of duty, which unintentionally severely injured the plaintiff, was not CT Page 12572 wilful or malicious conduct such that the exception to the workers' compensation exclusive remedy provision was satisfied as a matter of law, In Ramos v. Branford, 63 Conn. App. 671 (2001), the Appellate Court held, on the related issue of whether the plaintiff's complaint stated facts stating a ground on which relief could be granted on the "substantial certainty" test, that even a reckless failure to abide by regulations and safety standards was not the equivalent of a conscious and deliberate attempt to injure. See also Nolan v. Borkowski,206 Conn. 495, 501 (1988), in which conduct allegedly requiring an employee to engage in activity exceeding limits imposed by a physician was held not to be wilful and malicious conduct.
I find that the undisputed facts submitted in connection with the motion for summary judgment show that there is no genuine issue of fact as to whether the conduct of Pagani was wilful and malicious, whether under the Dubay and Elliott standard or under the Markey line of cases, and that summary judgment shall enter in favor of Pagani on the fifth count. There is neither wilful and malicious conduct, as defined inNolan and Melanson, nor extreme conduct as discussed in Dubay andElliott.
The sixth count purports to allege a civil rights claim pursuant to42 U.S.C. § 1983. The plaintiff claims that because volunteer firefighting is conducted under color of state law and there is evidence that the deceased was deprived of life without due process of law, there is at least a genuine issue as to whether the elements of § 1983 have been met. The defendant claims that under the facts of this case, there simply is not the sort of governmental action which federal civil rights laws are designed to protect against. I agree with the defendant.
Although it is clear that stating the elements of a civil rights claim is rather simple when a municipality is involved; see Gomez v. Toledo,446 U.S. 635 (1980); it is equally clear that not every tort committed by a person arguably acting under color of state law rises to the level of a civil rights violation. In ATC Partnership v. Windham, 251 Conn. 597
(1999), our Supreme Court discussed the limits of federal civil rights actions in the context of municipal actions. Although in that case the parameters were stated in the specific context of condemnation activity, many of the principles are applicable to the case at hand. The first issue is to identify the sort of due process alleged. In ATC, substantive due process violations were alleged. Although the plaintiff in this action has not precisely identified what sort of violation is claimed, it would appear to be substantive due process, because there are no allegations regarding procedural deprivations.
Where substantive due process is alleged, we must bear in mind that the CT Page 12573 basic constitutional protection is against the "arbitrary exercise of the powers of government, unrestrained by the established princeples of private right and distributive justice." ATC Partnership, supra, 605. The constitutional protections do not convert every governmental tort into a violation of due process; see Parratt v. Taylor, 451 U.S. 527 (1981); rather, the constitutional right to due process protects against severe governmental intrusions:
 Despite the important role of substantive due process in securing our fundamental liberties, that guarantee "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, supra, 523 U.S. 846. Rather, substantive due process has been held to protect against only the most arbitrary and conscience shocking governmental intrusions into the personal realm that "our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society." (Internal quotation marks omitted.) Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 850, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Thus, substantive due process has been held to safeguard such intimate activities as marriage; Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); contraception; Griswold v. Connecticut, 381 U.S. 479, 481-82, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); education of children; Meyer v. Nebraska, 262 U.S. 390, 399-403, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); and bodily integrity. Rochin v. California, 342 U.S. 165, 171-72, 72 S.Ct. 205, 96 L.Ed. 183 (1952). ATC Partnership v. Town of Windham, 251 Conn. 597, 606
(1999).
The case of County of Sacramento v. Lewis, 523 U.S. 833 (1998), is most instructive. The plaintiff in that case claimed that reckless indifference by a police officer during a high speed chase caused the death of the plaintiff's decedent. The factual situation, then, is highly analogous to the factual situation at hand, in that public safety officers allegedly acted recklessly (or, allegedly, acted with a higher degree of intent). The United States Supreme Court held that even if standards of reasonableness under tort law were violated, that sort of judgment call does not shock the conscience as exceeding bounds of governmental authority. See also McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986). CT Page 12574
The facts established by the materials reveal that there is no genuine issue of fact and that the factual scenario simply does not constitute the sort of arbitrary excessiveness of governmental power against which the fourteenth amendment to the United States Constitution is designed to protect. The motion for summary judgment is granted as to the sixth count, and judgment may enter m favor of the defendant Pagani.[6]
Beach, J.