[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF TOWN OF SOMERS
The Town of Somers ("the Town") has moved for summary judgment on the claims asserted against it in the seventh and eighth counts of the plaintiff's Substitute Revised Complaint, which is dated February 13, 2001. The motion and a supplement to that motion were filed before this case was transferred to the complex litigation docket. A request for adjudication has been filed, the motion and supplement have been fully briefed, and the court heard oral argument on March 15, 2002.
In the counts of the complaint challenged by the Town's motion, the administrator of the estate of Craig Arnone, a volunteer firefighter, CT Page 3859 alleges that the Town is liable for the decedent's injuries and death, which tragically occurred as a result of electrocution while he responded to a house fire at 879 Main Street in Somers on December 8, 1996.
In the seventh count, the plaintiff alleges that the Town had a duty to exercise reasonable care in appointing or approving a fire chief and that it employed Edward Pagani, Jr. The plaintiff does not allege any facts concerning Pagani's fitness to serve when he was hired or approved, rather, the plaintiff alleges that there was a downed live electrical power line on the premises at the fire at issue, that Pagani "failed to take appropriate steps to rectify the dangerous conditions and as a result of the conduct, [and that] at approximately 1:40 a.m. the plaintiff's decedent, Craig Michael Arnone, came into contact with said live electric power line and was fatally injured by electrocution." (Count seven, para 9.) The plaintiff alleges that his decedent's injuries and death were caused by the conduct of Pagani. The plaintiff alleges that the Town's authorization of Pagani to preside over the fire scene constituted a violation of the decedent's rights under Conn. Gen. Stat. § 31-49 and the constitutions of the United States and of the State of Connecticut. He claims that the Town is liable pursuant to42 U.S.C. § 1983.
In the eighth count, the plaintiff alleges that Pagani knew the downed live power line was a dangerous condition and "failed to take appropriate steps to remedy or rectify the dangerous condition" (para. 12), and that "the working conditions for the decedent Craig Arnone were established by the defendant Town of Somers' employee, Edward Pagani[,] Jr., and Chief Pagani's conduct constituted willful and serious misconduct by the employer of the decedent Craig Arnone, the Town of Somers" (para. 13). The plaintiff further alleges that "[t]he dangerous condition was such that under the working conditions established by Chief Pagani, injury was substantially certain to occur." (Para. 14.)
The Town asserts that the defendant is entitled to judgment on these counts because the law does not impose liability on a municipality on the basis alleged.
Is Summary Judgment an Appropriate Procedure?
As a preliminary matter, the plaintiff asserts that a motion for summary judgment may not be used to challenge the legal sufficiency of a cause of action, and that the Town forfeited any right to obtain such a determination on motion by failing to file a motion to strike these counts of the complaint. In essence, the plaintiff takes the position that a party that fails to move to strike must go through a complete trial of the plaintiff's claim and may raise its legal insufficiency only CT Page 3860 by moving for a directed verdict or evidentiary nonsuit at the conclusion of the evidence.
While legal insufficiency may in most circumstances be raised by a motion to strike, where the defendant's claim of insufficiency relies on undisputed facts that the plaintiff has not chosen to plead, a motion to strike is unavailing. In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. Gazo v. Stamford, 255 Conn. 245, 260 (2001). A plaintiff clearly has no duty to plead facts relevant to a defendant's defense but only "a plain and concise statement of the material facts on which the pleader relies." Practice Book § 10-1. A plaintiff clearly does not rely on the facts that constitute the grounds for the defendant's defense of the action. The defense to count eight rests on the fact that the plaintiff's decedent's estate received workers compensation benefits. Contrary to the plaintiff's suggestion at oral argument, the Town could not have required him to plead that fact by filing a request to revise because, as has just been stated, the plaintiff has no obligation under § 10-1 to plead facts other than those on which his complaint is based. None of the reasons that support the filing of a request to revise a complaint relate to any obligation by the plaintiff to include the facts relevant to the defendant's defenses. Practice Book § 10-35.
The motion for summary judgment is specifically identified in the Connecticut Practice Book as a procedure by which a party may seek a court determination "that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. In contrast to a motion to strike, which is decided on the basis of the pleadings alleged, a motion for summary judgment is decided on the basis of the material facts as to which there is no genuine issue. Id.
The plaintiff asserts that a motion for summary judgment may be employed to resolve the sufficiency of a legal claim only if the parties agree to the facts, the situation in which the Supreme Court permitted use of a motion for summary judgment to challenge the legal sufficiency of the claim in Boucher Agency, Inc. v. Zimmer, 160 Conn. 404 (1971). While the Supreme Court stated in that case that a motion for summary judgment was an "incorrect" procedure (though it nevertheless upheld the judgment entered by the trial court upon granting that motion), more recent appellate cases suggest that a party is not precluded from using. a motion for summary judgment where there is no genuine dispute concerning material facts that may not have been pleaded by the plaintiff. In Drahan v. Board of Education, 42 Conn. App. 480, 498 n. 17, cert. denied, 239 Conn. 921 (1996), the Appellate Court stated that a motion for summary judgment was "a proper way to test the legal CT Page 3861 sufficiency" of a count which the Court found failed to state a cause of action. In Ramos v. Branford, 63 Conn. App. 671 (2001), the court upheld the granting of summary judgment against a plaintiff who made virtually the same claim that the plaintiff makes in count eight.
The Supreme Court upheld summary judgment granted on the basis of legal insufficiency of the complaint in Haynes v. Yale New Haven Hospital,243 Conn. 17 (1997), although the opinion contains no discussion of the choice of motion.
The plaintiff notes that several trial court judges have ruled that the legal sufficiency of a complaint may not be adjudicated upon a motion for summary judgment because the granting of such a motion leads to judgment, without an opportunity for the plaintiff to plead over, as he could do if legal sufficiency were raised by a motion to strike. This reasoning overlooks the fact that a party that raises legal insufficiency by way of a motion for summary judgment assumes the burden of proving what the material facts are with regard to the sufficiency of the complaint. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St.Vincent's Medical Center, 252 Conn. 363, 372 n. 7 (2000). The court must view the evidence in the light most favorable to the nonmoving party and apply the same standard as if the motion were one for a directed verdict at the close of the evidence. Sherwood v. Danbury Hospital, 252 Conn. 193,201 (2000); Serrano v. Burns, 248 Conn. 419, 424 (1999); Connell v.Colwell, 214 Conn. 242, 246-47 (1990); Forte v. Citicorp Mortgage, Inc.,66 Conn. App. 475, 482 (2001). "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 380 (1969); Vuonov. Eldred, 155 Conn. 704, 705 (1967); citing Sheriden v. Board ofEducation, 20 Conn. App. 231, 239 (1989).
The court finds that a claim that, as a matter of law, the plaintiff is not entitled to judgment may properly be raised by a motion for summary judgment. To be entitled to summary judgment, however, the movant must show what the material facts are, that there is no genuine dispute as to those facts, and that under those facts the movant is entitled to judgment as a matter of law. Contrary to the plaintiff's suggestion, this court did not rule in Durkin v. Durkin, Superior Court, judicial district of Waterbury, Docket No. X01 CV00 0158557 S (Oct. 16, 2000), that summary judgment may not be used to determine whether a defendant is entitled to judgment as a matter of law. What this court said was that "[t]his court expresses no opinion whether a motion for summary judgment can be used to CT Page 3862 raise the legal sufficiency of a claim where the facts are undisputed and the pleadings are closed, because in the instant case neither circumstance exists."
Standard of review for summary judgment
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; H.O.R.S.E. ofConnecticut v. Town of Washington, 258 Conn. 553, 559 (2001); Alvarez v.New Haven Register, Inc., 249 Conn. 709, 714 (1999). The court has set forth additional articulations of the applicable standard in the preceding discussion of the use of a motion for summary judgment to challenge the plaintiff's entitlement to judgment on the claim asserted.
Civil Rights Claim
As has been described above, in the seventh count of his complaint the plaintiff alleges that the selection of Pagani as fire chief and Pagani's direction on behalf of the Town of the fire abatement efforts at the fire in question violated his rights under the Fourteenth Amendment to the Constitution of the United States. In his briefs in opposition to the motion for summary judgment, the plaintiff asserts that the specific right invoked in the seventh count is a substantive due process. right not to be deprived of life by the actions of the defendant Town.
The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty or property, without due process of law." Title 42 U.S. Code § 1983 authorizes a cause of action for violation of rights secured by the federal constitution and laws: "[e]ach person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . ."
A municipality may be a "person," pursuant to § 1983. Monell v.Department of Social Services of the City of New York, 436 U.S. 658,688-89 (1978). A municipality is liable if a deprivation of rights was inflicted on the plaintiff in accordance with a policy of the municipality, directed by those who establish governmental policy for the municipality. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Monellv. Department of Social Services of the City of New York, supra,436 U.S. 658; Gottlieb v. County of Orange, 84 F.3d 511 (2d Cir. 1996); CT Page 3863Zabra v. Town of Southold, 48 F.3d 674 (2d Cir. 1995); Dwares v. City ofNew York, 985 F.2d 94 (2d Cir. 1993).
The doctrine of respondeat superior, however, does not apply to § 1983 claims. Monell v. Department of Social Services of the City of NewYork, supra, 436 U.S. 691-94. If a municipal official acting under color of state law acts on behalf of the municipality in a manner that deprives a plaintiff of a federally-protected right, the municipality is not liable simply because it has entrusted authority to the individual official; rather, as the Supreme Court ruled unequivocally in Monell and its progeny, a municipality is liable only if the deprivation was imposed by the application of a policy adopted by those responsible for enacting the municipality's official policies. Id., 694-95.
A. Material facts
Since the acts that the plaintiff asserts violated § 1983 are the Town's selection of Pagani as fire chief and Pagani's conduct at the fire, the facts that are material to the determination whether the plaintiff has stated a cause of action under § 1983 against the Town are facts that 1) tend to establish whether the fire chief was selected by the Town, or 2) tend to establish or negate a finding that Pagani's handling of the house fire at issue proceeded from a policy adopted by those officials who are the policymakers of the Town.
It is undisputed that the plaintiff's decedent, Craig Arnone, was acting as a volunteer firefighter and that Pagani was the fire chief for the Somers Volunteer Fire Department at the time of the fire. The constitution of the Somers Volunteer Fire Department, not any municipal ordinance, governs the selection of the fire chief. That constitution provides for election of the fire chief by the membership of the volunteer fire department. It is undisputed that the post of fire chief is a part-time, unpaid position, and that Pagani was elected by other volunteer firefighters to serve as chief Article 2, Section 2 of the group's constitution provides:
 [t]he Line Fire Officers of the Department shall consist of a Chief, First Deputy, Second Deputy, First Captain, Second Captain, First Lieutenant, Second Lieutenant, and Chief Engineer. These officers shall be elected by the membership for a two year term with the Chief, Second Deputy, Second Captain, and First Lieutenant being elected on even years.
Article 5 of the constitution of the Somers Volunteer Fire Department provides, at Section 8: CT Page 3864
 It shall be the duty of the Chief to command the department and have entire control there of while on duty, at a parade, at a fire, and all proper occasions. All orders given by him on these occasions shall be implicitly obeyed. He shall report all imperfections that may come to his knowledge in the working of the fire equipment to the Board of Trustees.
The board of trustees, also referred to in the constitution of the volunteer fire department as a "board of directors," is composed, pursuant to Article 2, Section 1, of the officers and three trustees, elected by the membership, "in which shall be vested the government of the Department." The uncontroverted facts establish that the fire chief was not selected by the Town but by the members of the volunteer fire department at an election in which only they voted. These facts doom the plaintiff's charge that the Town violated his decedent's constitutional rights by selecting Pagani to serve as fire chief.
The plaintiff has further alleged that the method by which Pagani directed the response to the fire was the result of a policy enacted by the Town. The constitution of the volunteer fire department states that the fire chief himself decides how to manage fire suppression. In his brief, the plaintiff asserts that Pagani testified that the Town had a policy or procedure with regard to suppression efforts at fire scenes where live power lines were present. The cited testimony, pages 93-98 of Pagani's deposition transcript, identifies no policy of the Town. In the cited testimony, counsel for the plaintiff asked what the "proper procedure" was with regard to downed wires but then abandoned the question and instead asked Pagani about his own assumptions and judgments, eliciting no testimony that any of his habits proceeded from adherence to any policy of the Town. The only standing operating procedure that Pagani mentioned was a written procedure of the volunteer fire department specifying how far to park from a car fire or car accident. (August 8, 2000 Pagani Tr. pp. 95-96.)
B. Do the facts meet the Monell test
The court finds that there is no genuine dispute as to the material facts concerning the selection of the fire chief and the nonexistence of a policy for suppressing fires in the manner claimed by the plaintiff to constitute a violation of the Fourteenth Amendment. Since the membership of the volunteer fire department, not the Town, selected the fire chief, selection and entrustment of leadership responsibility was shown not to have been the act of the Town. The facts establish that the fire chief CT Page 3865 exercised his own judgment and was not acting pursuant to any policy of the town in his conduct of the response to the fire. Accordingly, the plaintiff's claim does not meet the criteria of Monell.
The court notes, in addition, that the Supreme Court of the United States has stated unequivocally that § 1983 does not create a general federal cause of action for negligence resulting in injury or death. SeeCollins v. City of Harker Heights, Texas, 503 U.S. 115, 125-27 (1992);Daniels v. Williams, 474 U.S. 327, 330 (1986); Davidson v. Cannon,474 U.S. 344, 347-48 (1986).
The uncontroverted facts on the issues that Monell signals are material entitle the plaintiff to judgment on the seventh count of the complaint.
Negligence Claim
In the eighth count of his complaint, the plaintiff alleges that fire chief Pagani had authority as chief of the volunteer fire department to establish working conditions for plaintiff's decedent and in the presence of a downed, live power line, Pagani "failed to take appropriate steps to rectify the dangerous condition and as a result of the conduct, at approximately 1:40 a.m., the plaintiff's decedent, Craig Michael Arnone came into contact with said live electric power line and was fatally injured by electrocution." (Substitute Revised Complaint, count eight, para. 7). The plaintiff alleges that the downed power line was a dangerous condition that was known to Pagani and that he "failed to take appropriate steps to remedy or rectify the dangerous condition." (Para. 12.) He further alleges the "the dangerous condition was such that under the working conditions established by Chief Pagani, injury was substantially certain to occur" (para. 14); and he characterizes Pagani' s conduct as "wilful and serious misconduct" (para. 13).
The plaintiff did not allege in his complaint that his decedent's estate received worker's compensation benefits. That fact, set forth in an affidavit of Gordon Mello, first selectman of the Town of Somers, has not been challenged by any counter-affidavit
A. Does the "substantial certainty of injury" exception to the workers'compensation bar apply?
The issue before the court with regard to the eighth count is whether Conn. Gen. Stat. § 31-284 (a), which makes a claim for worker's compensation benefits the exclusive remedy for workers injured in the course of their employment, bars the plaintiff's claim. That statute provides: "(a) An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for CT Page 3866 damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained." The plaintiff does not contest that the Town complied with § 31-284 (b) by providing worker's compensation coverage and benefits to his decedent's estate.
The plaintiff claims that the statutory bar against civil actions by recipients of worker's compensation is inapplicable because the exception identified in Suarez v. Dickmont Plastics Corp. , 242 Conn. 255 (1997) ("Suarez II"), applies to the situation presented. The Connecticut Supreme Court has "consistently . . . interpreted the exclusivity provision of the act, General Statutes § 31-284 (a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct. Jett v. Dunlap, 179 Conn. 215, 217 . . . (1979)."Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 106 (1994) ("Suarez I"). In Suarez II, the Court stated that a plaintiff "could establish an intentional tort claim and overcome the exclusivity bar . . . by proving either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." Suarez II, supra,242 Conn. 257-58; Ramos v. Branford, supra, 63 Conn. App. 680. The plaintiff does not assert any actual intention, but invokes only the "substantial certainty" test for determining that the employer engaged in intentional misconduct.
Where the employer is a corporation and the acts claimed to have caused the injury are those of a supervisory employee, Connecticut's appellate courts have ruled that the intent of the supervisor can be considered to be the intent of the employer only if the supervisor is "of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." SuarezII, supra, 242 Conn. 273-74: Jett v. Dunlap, supra, 179 Conn. 218;Scheirer v. Frenish, Inc., 56 Conn. App. 228, 233-34, cert denied,252 Conn. 938 (1999).
The Appellate Court approved the use of a motion for summary judgment to invoke the exclusivity provision of the worker's compensation statute where a plaintiff alleged the Jett exception. Scheirer v. Frenish, Inc., supra, 56 Conn. 233.
B. Material facts
The facts material to the issue of whether this claim is barred by the CT Page 3867 exclusivity provision of the workers' compensation act are 1) the uncontested fact that the plaintiff's decedent's estate received worker's compensation benefits and 2) the facts about the employer's creation of a dangerous condition and its intent. On the latter topic, the parties do not dispute that the Town did not cause the downed live electrical wire to be present on the property where the plaintiff's decedent was injured. The plaintiff has presented no affidavits or any other materials to show that the Town played any role in causing the power line to be in a dangerous condition at the scene of the fire, rather, the affidavit excerpts they have filed show only that a person on the scene said within Pagani's hearing that the live power line was present and was a hazard.
The plaintiff alleges in his complaint that the power lines were the property of Connecticut Light Power and Northeast Utilities Service Company, and that these entities, not the Town, operated the electrical power lines near the burning premises (Substitute Revised Complaint, count one, paras. 11, 12), that an oak tree near the power line fell and broke the line, causing it to fall to the ground while still carrying electricity (para. 15), and that these defendants failed to terminate power to the broken line (para. 19(m)). The court finds that the parties are not in dispute as to the material facts concerning the creation of the dangerous condition that caused Arnone's death.
C. Do the facts meet the standard of the exception for intentionalmisconduct?
Assessing the Suarez claim of a firefighter concerning a hazard at a fire scene in Ramos v. Branford, supra, 63 Conn. App. 680, the Appellate Court noted that "the substantial certainty standard requires a showing that the act producing the injury was intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct."
The plaintiff nowhere alleges that Pagani intentionally created the dangerous condition that caused his decedent's injury and death and the undisputed facts demonstrate that he did not. The plaintiff alleges instead that Pagani should have remedied the dangerous condition that existed at the fire scene. Leaving aside the issue whether the fire chief is the alter ego of the Town, see Scheirer v. Frenish Inc., supra,56 Conn. App. 233, the allegations of the complaint and the material facts defeat any conclusion that Pagani "intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur," the substantial certainty standard defined in Jett and Suarez I and II. It is the disconnection of the power line and the conditions that caused it, not the fire chief, that created the dangerous condition at the fire. The plaintiff does not assert that Pagani caused CT Page 3868 the downed wire to be present on the premises.
The Supreme Court has never suggested that a sudden event or emergency, or even an existing one, if reacted to in a negligent manner, is the equivalent of the employer's creating a dangerous condition. The dangerous condition alleged in Suarez I and II was the employer's requirement that machines be left running while employees cleaned them with their hands. Suarez I, supra, 229 Conn. 107. The machines being in an operative mode during manual cleaning was the condition that was dangerous, and it was one allegedly created by an intentional choice by the employer to have such a condition present at the workplace. The focus of the "substantial certainty" test is a way not of measuring foreseeability in assessing negligent conduct, but a formulation of the employer's intent, a recognition that the choice to create a dangerous condition likely to result in injury is another form of intending an injury to occur. Where an accident or natural causes create the dangerous condition, those events do not reveal the intent of the employer. The Supreme Court stated quite plainly in Suarez I that in creating the "substantial certainty" test for intentional misconduct, it meant to "preserve the statutory scheme and overall purposes of the [workers compensation] act." Suarez I, supra, 229 Conn. 109, and it cannot be seen as having created a standard by which negligent failure to react to an outside danger avoids the exclusivity provision of § 51-284 (a). As the Appellate Court observed in Ramos v. Branford, supra,63 Conn. App. 680, "Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. 6 A. Larson L. Larson, Workmen's Compensation (1997) § 68.13, pp. 13-12 through 13-13."
The plaintiff asserts that conduct by a supervisor at the scene of an emergency can be frozen in time and characterized as a choice to create a "dangerous condition." Such a construction deprives the phrase of any meaning that is distinct from mere negligence in reaction to a situation created by outside forces and eliminates the element of intentional harm to workers that is the basis for the Suarez exception. This court finds that the facts alleged and the material facts concerning the way in which the presence of the downed live wire occurred do not support a conclusion that the dangerous condition that caused Craig Arnone's death was a dangerous condition created by the Town with the substantial certainty that an employee would be injured or killed. CT Page 3869
The court finds that the undisputed material facts do not come within the Jett/Suarez exception to the bar of § 31-284 (a) and that summary judgment should enter in favor of the Town on this claim.
Municipal Immunity
The Town asserts additionally that it cannot be held liable for the acts of Pagani because it is immune from claims based on the willful misconduct of fire-fighters. At paragraph 13 of count eight, the plaintiff alleges that Pagani's conduct "constituted wilful and serious misconduct by the employer of the decedent Craig Arnone, the Town of Somers."
Conn. Gen. Stat § 52-557n (a) provides in pertinent part: "(2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute . . . wilful misconduct."
Conn. Gen. Stat. § 7-308, which requires a town to pay on behalf of firefighters sums for which they become liable, excludes wilful misconduct.
The material fact at issue with regard to any claim based on agency is the allegation of willful misconduct, which the plaintiff has quite clearly alleged. The cited statutes establish that the Town is immune from vicarious liability or indemnification obligations for wilful misconduct.
Conclusion
There can be no doubt that the Town of Somers must regard the death of Craig Arnone in the course of his service as a terrible and tragic event, nor that he deserves the Town's gratitude for his service and sacrifice. Under existing law, however, the Town is not liable to his estate for payments in addition to those provided under the worker's compensation act.
Summary judgment shall enter in favor of the Town of Somers on the seventh and eighth counts of the Substitute Revised Complaint.
Beverly J. Hodgson Judge of the Superior Court