THE STATE OF CONNECTICUT *vs.* JOSEPH FARO.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 7th—decided March 26th, 1934.

*Hugh M. Alcorn,* State's Attorney, and *Harold E. Mitchell,* Assistant State's Attorney, for the State.

*Edward J. Daly,* with whom was *Stanley D. Fisher,* for the accused.

MALTBIE, C. J.   The State's Attorney filed an information against the defendant alleging that, without a permit therefor, he sold or kept for sale certain alcoholic liquors contrary to the provisions of the General Statutes, Cum. Sup. 1933, § 737b.   This statute reads as follows: "DISPOSING OF LIQUORS WITHOUT, OR CONTRARY TO PERMIT.   Any person who, without a permit therefor, shall, by sample, by soliciting or procuring orders, or otherwise, sell, or shall offer or expose for sale, or shall own or keep with intent to sell, any alcoholic liquor contrary to the provisions of this chapter and the regulations of the commission with respect to the class of permit so held by him, shall be subject to the penalties in section 739b."   The defendant demurred to the information substantially upon the ground that the statute referred to did not make it a crime to sell alcoholic liquor without a permit and that

it was too vague and uncertain to permit any prosecution under its terms. The issues of law raised by the demurrer were reserved for this court. It is stipulated that the defendant did sell and keep with intent to sell certain alcoholic liquors without having a permit to do so issued to him by the Liquor Control Commission.

The section of the General Statutes referred to is a part of the Liquor Control Act, General Statutes, Cum. Sup. 1933, § 669b *et seq.*, certain features of which were recently discussed in *Murphy* v. *Bergin,* 118 Conn. 249, 171 Atl. 433. The Act establishes the Liquor Control Commission and provides that there shall be various classes of permits for the manufacture and sale of liquor, which the commission is to issue. It defines and limits the carrying on of business under each class of permits; thus, it forbids the sale of alcoholic liquor under permits on certain days and except within certain hours, and it provides that permits shall be confined to the parts of any city or town prescribed by zoning ordinances, and that tavern permits, with certain exceptions, will not be granted in close proximity to any church, school or charitable institution. The Act, however, nowhere contains an express provision that alcoholic liquor shall not be manufactured or sold except by persons to whom a permit has been issued by the commission, nor that it shall not be manufactured or sold by one holding a permit except in accordance with the provisions of the Act and the regulations of the commission. It does provide that "any permittee [who has] been convicted of violation of any of the provisions of this chapter" shall, "in addition to the penalties for such offense," incur a forfeiture of his permit. It also provides that each applicant for a permit shall file a bond conditioned upon compliance with the provisions of the Act and

that "if a permittee shall be convicted of the violation of any provision of this chapter" the bond given by him shall be forfeited.

The Act contains various provisions as to the sale of liquor to certain persons in certain places, under penalties specifically stated. A number of these provisions make no mention of permittees but are unlimited in their application. But in certain of them the prohibition is directed solely against permittees; thus, the Act makes subject to a penalty "every permittee" who sells to persons upon a list, prepared by the selectmen of a town, of those who are receiving town aid and are known to use alcoholic liquor, to certain persons whose relatives have requested that sales be not made to them, and to minors, intoxicated persons, or habitual drunkards. Article III contains provisions for determination by vote in any town whether or not permits, with certain exceptions, may be granted for the sale of liquor within its boundaries, and this Article of the law begins with a statement that the sale of liquor "under the provisions of this chapter" shall be permitted in any town "until . . . a contrary preference shall have been indicated" by such a vote. Part II of the Act provides for the imposition of a tax upon every person, company or corporation engaged in the business of manufacturing or selling alcoholic liquor, based upon gross receipts from the business, and requires every person liable to the tax to make return to the tax commissioner of the amount of such receipts; and the commissioner is required to notify the Liquor Control Commission of the name and address "of each person" who has failed to file a return or to pay any tax prescribed or to perform any other duty required of him under this part of the Act, and the commission is directed to suspend any permit which

may have been issued to such person until he has complied with the requirements of the law.

The main contention raised by the demurrer comes down to this, that, in order to convict the defendant under the provisions of § 737b, it must be proved that he sold or kept with intent to sell alcoholic liquor, first, without a permit therefor, and second, contrary to the provisions of the Act, and that, as the Act nowhere expressly forbids any person to sell or keep for sale liquor without a permit, even if the defendant had no permit, the second element cannot be found to exist. While it is true that the Act nowhere in terms forbids any person to sell or keep for sale liquor without having a permit to do so issued by the commission, it is perfectly obvious from the provisions of the Act which we have summarized that this was the intention of the legislature. If it were lawful for one not having a permit to sell alcoholic liquor, there would be no occasion for anyone desiring to do so to apply for a permit and nothing to prevent one who has applied for and been refused a permit because he is an unsuitable person to have one, from engaging in the sale of liquor. Such a person might sell at any hour of the day and on any day; he would be free to sell any kind of liquor and in any size container; he might sell to minors, intoxicated persons, habitual drunkards and town charges despite notice from the selectmen; if a tavern keeper, he might establish his business next door to a church, school or charitable institution. No vote of any town could prevent the unrestricted sale of liquor within its boundaries. In short, if the contention of the defendant should be sustained, the entire legislative plan of liquor control would be abortive and a useless burden and expense to the State; and even the administration of the portion of the Act deal-

ing with taxation would be much more difficult and cumbersome.

The Act originated in a bill reported to the General Assembly by a special commission appointed for that purpose pursuant to a Special Act. 21 Special Acts, p. 745. The bill so reported was adopted by the legislature, with certain changes, none of which affected § 737b. The caption of the section which is now 737b, "Disposing of Liquors without, or contrary to Permit," appeared in it when it was reported and was attached to it when it was enacted. This caption was before the legislature as a part of the bill and as such adopted by it and we may properly consider it in determining the legislative intent. "The title of an Act cannot enlarge or confer power, but in the construction of statutes which are doubtful or ambiguous in meaning, the title may aid in showing the legislative intent." *Hazzard* v. *Gallucci,* 89 Conn. 196, 200, 93 Atl. 230; *New York, N. H. & H. R. Co.* v. *Orange,* 91 Conn. 472, 479, 100 Atl. 25. The caption of this section points clearly to the conclusion that one of its purposes was to make it a criminal offense to sell alcoholic liquor without a permit. When the plan and scope of the Act, as a whole, and the terms of this caption are considered, it is hard to imagine a case where a legislative intent is more clearly manifest, though not stated in direct language. The application of any technical rule of statutory construction which would defeat so obvious an intention would be a reproach upon the law.

What was said by this court in 1848, speaking by its Chief Justice, in *Rawson* v. *State,* 19 Conn. 292, 299, is particularly applicable: "All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the sub-

ject of legislation, and so that the entire language shall have effect, if it can, without defeating the obvious design and purpose of the law. And in doing this, the application of common sense to the language, is not to be excluded. . . . And there can be no rule which requires courts so to understand a penal law, as to involve an absurdity, or frustrate the evident design of the law-giver. . . . But this, it seems to us, we are now required, by this defendant, to do. No man can read this statute without learning from its entire perusal, that the controlling purpose of the legislature was, to suppress tippling-houses, under whatever pretence or name established; and thus to prevent the facilities to intemperate and ruinous dram-drinking." As this court said, by BEACH, J., in *State* v. *Levy*, 103 Conn. 138, 141, 130 Atl. 96: "Courts do not approach the construction of a penal statute creating a new offense against the State with the hostile purpose of crippling a legislative intent plainly expressed."

The principle that a penal statute should receive a strict construction, and that no act should be held within it which does not fall within its spirit and the fair import of its language, cannot be questioned. *Morin* v. *Newbury*, 79 Conn. 338, 340, 65 Atl. 156; *State* v. *Penner*, 85 Conn. 481, 484, 83 Atl. 625; *State* v. *Parker*, 112 Conn. 39, 46, 151 Atl. 325. This rule had its origin in England at a time when English law was exceedingly harsh in its penalties and sweeping in its condemnations. There is not now the same necessity for adherence to technical niceties or artificial distinctions in aid of persons accused of crime as there was then. *United States* v. *Lacher*, 134 U. S. 624, 629, 10 Sup. Ct. 625. To quote again from *Rawson* v. *State, supra,* p. 295: "The criminal code of this State is clear in its definition of crimes, mild in its punishments, and careful in its provisions for securing

full and impartial trials. It is a false humanity which would protect offenders, either by stifling detection and prosecution, or by affording facilities to escape conviction, by unnecessary and artificial technicalities in the administration of the law." The purpose of the rule of strict construction is not to enable a person to avoid the clear import of a law through some mere technicality, but to enable the people of the State to know clearly and precisely what acts the legislature has forbidden under a penalty, that they may govern their conduct accordingly, and to make sure that no act which the legislature did not intend to include will be held by the courts within the penalty of the law. *Daggett* v. *State,* 4 Conn. 60, 63; *United States* v. *Lacher, supra.* To enforce the rule beyond its purpose would be to exalt technicalities above substance. "The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent." *United States* v. *Corbett,* 215 U. S. 233, 242, 30 Sup. Ct. 81; *United States* v. *Lacher, supra; State* v. *Goodwin,* 169 Ind. 265, 267, 82 N. E. 459; *Trammell* v. *Victor Mfg. Co.,* 102 S. C. 483, 487, 86 S. E. 1057; *Weirich* v. *State,* 140 Wis. 98, 100, 121 N. W. 652. We feel warranted in construing the statute as prohibiting the selling or offering for sale of alcoholic liquor by one who has not received a permit therefor.

Very clearly the legislature intended by the provisions of § 737b to make it a criminal offense for one not having a permit issued by the commission to sell, offer or expose for sale, or keep with intent to sell, alcoholic liquor. But to confine the meaning of the section to such offenses would fall far short of carrying out the legislative intent clearly expressed in the Act and in this section. It would render nugatory the

words "contrary to the provisions of this chapter," for if one should sell liquor without a permit he would be *ipso facto* doing an act contrary to the provisions of the law; and it would make meaningless the reference to "the regulations of the commission with respect to the class of permit held by him." We must assume that the legislature had a purpose in the use of the words we have quoted. The reference to acts "contrary to the regulations of the commission with respect to the class of permit" held by a person selling liquor, clearly shows that the legislature meant to penalize unlawful acts by one holding a permit. If we turn to the sections of the Act dealing with the forfeiture of permits and the forfeiture of bonds given upon the grant of permits, which are stated to be "for compliance with the provisions of this chapter," we find that these forfeitures are conditioned upon a conviction of a violation of the provisions of the chapter; but many of the provisions restricting the conduct of the liquor business by one having a permit provide no specific penalty and would afford no basis for a conviction unless it could be found in the section of the Act we are considering.

The caption of § 737b points to the only reasonable construction to be placed upon it. Very clearly the draftsman was striving to condense its provisions into the briefest possible compass. The matters which it was intended to penalize were primarily the sale of alcoholic liquor without a permit and the sale by a person who had a permit in breach of his obligations under the Act or the proper regulations of the commission; or, to state the context of the caption in somewhat less abbreviated form, disposing of liquors without a permit and disposing of liquors in violation of the restrictions applicable to a permit. To construe this section as including both is to make sensible what

otherwise is lacking in sense and to express the undoubted intent of the legislature. If such a construction seems to derogate from the rule of strict construction of penal statutes to which we have referred, the answer is that the purpose of that rule is in no way violated, because no reasonable man reading this Act could fail to understand that if without a permit he sold or offered for sale or kept for sale alcoholic liquor or, having a permit, he sold or offered for sale or kept with intent to sell any such liquor contrary to the provisions of the Act or the proper regulations of the commission applicable to the class of permit he held, he would subject himself to prosecution and the infliction of one of the penalties provided in the Act.

So construed, this section of the Act is not indefinite and uncertain in meaning and the second ground of demurrer is not well taken.

A sufficient answer to the questions propounded is that § 737b of the Liquor Control Act makes it a penal offense to sell or keep with intent to sell alcoholic liquor without a permit and that the allegations of the information sufficiently charge that offense.

No costs will be taxed in this court.

In this opinion the other judges concurred.