KENNETH E. GOING *v.* CROMWELL FIRE DISTRICT, FIRE DEPARTMENT, ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued November 6, 1969—decided January 15, 1970

*Edward S. Pomeranz,* for the defendant Aetna Insurance Company.

*Bernard F. McGovern,* assistant attorney general, with whom were *C. Michael Budlong,* assistant attorney general, and, on the brief, *Robert K. Killian,* attorney general, and *F. Michael Ahern,* assistant attorney general, for the defendant Gerald A. Lamb, state treasurer.

*Jay W. Jackson* filed a brief as amicus curiae but did not argue the cause.

No appearance for the plaintiff.

COTTER, J. The defendant the Aetna Insurance Company, the insurer of the liability of the Cromwell fire district, claims that compensation due the plaintiff for an injury should be prorated between it and the second injury and compensation assurance fund pursuant to § 31-310 of the General Statutes, the pertinent portion of which is printed in the footnote.[1] This section of the statute originated in the 1967 session of the General Assembly as Public Act No. 842, § 17. The workmen's compensation commissioner made a finding and pro forma award in favor of the plaintiff. The facts found have been treated by the parties as the facts in the case. The Superior Court reserved the matter for the advice of this court pursuant to General Statutes § 31-324.

[1] "Sec. 31-310. DETERMINATION OF AVERAGE WEEKLY EARNINGS. . . . Where the injured employee has worked for more than one employer, his average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period involved, but the employer in whose employ the injury occurred shall be liable for all medical and hospital costs and a pro rata portion of the compensation benefits based upon the ratio of the amount of wages paid by him to the total wages paid the employee in such average week. The remaining portion of the compensation benefits shall be paid from the second injury and assurance fund."

The following facts were found by the commissioner: The plaintiff, when he sustained accidental injuries on March 31, 1968, while in the performance of fire duties, was an "active member" of the Cromwell fire district "volunteer fire department," as the term is used in General Statutes § 7-314a (a) (2).[2] As a result of such injuries he was totally incapacitated for a period of five and three-sevenths weeks and thus was entitled to compensation at the maximum rate of $74 a week pursuant to § 7-314a (b).[2] During the twenty-six weeks preceding the injury, he was regularly employed by Western Electric Company, Inc., and was so employed on the date of his injury as a volunteer fireman, and his average weekly wage as an employee of that company for the applicable period, computed pursuant to General Statutes § 31-310, was $168.04. The defendant state treasurer is the custodian of the second injury and compensation assurance fund.

The determination whether the claim for acci-

[2] "Sec. 7-314a. DEATH, DISABILITY AND INJURY BENEFITS. (a) Active members of volunteer fire departments shall be compensated for death, disability or injury incurred while in training for or engaged in volunteer fire duty as follows: (1) Employees of the state and of municipalities of the state who are members of a volunteer fire department and for whom as such employees such compensation is provided by any general or special law shall be construed to be acting within the scope of their public employment while in training for or engaged in volunteer fire duty and shall be compensated in accordance with the provisions of chapter 568; (2) all other volunteer firemen who are not such public employees shall be construed to be employees of the municipality for the benefit of which volunteer fire services are rendered while in training or engaged in volunteer fire duty and shall be compensated in accordance with the provisions of chapter 568. (b) For the purpose of this section, the average weekly wage of a volunteer fireman shall be construed to be the average production wage in the state as determined by the labor commissioner under the provisions of section 31-309."

dental injury of a volunteer fireman in the plaintiff's position comes within the meaning of General Statutes § 31-310, which is part of chapter 568, entitled "Workmen's Compensation Act," must be governed by the expressed intention of the General Assembly. *Smith* v. *State,* 138 Conn. 620, 623, 88 A.2d 117. The pertinent portion of § 31-310 which must be construed for a determination of the issue in the present case originated in the 1967 legislative session as § 17 of Public Act No. 842. It is part of the Workmen's Compensation Act and is designed to protect the concurrent employee such as a wage earner having more than one job who, for instance, might lose his earnings from his principal job because of an injury occurring on another job with a low compensation rate.[3] Cf. *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 102, 105, 139 A.2d 156.

A brief legislative history of the evolution of acci-

---

[3] The House of Representatives member who reported the bill (H.B. 2161, 1967 Sess.) on behalf of the joint committee on labor said with regard to § 17: "In today's world, it is not uncommon for employees to hold more than one job. . . . If an employee is injured on the part time job, his average wages on that job are small in relation to his overall weekly earnings and with respect to his regular job. Yet those wages would determine his compensation rate. This can be devastating to a worker because the amount paid would be a pittance. On the other hand, we must recognize that it would be unfair to the part time or second employer to have him pay benefits based upon the overall wages of the employee. We have therefore proposed a compromise under which the part time or second employer pays for all the medical bills as he now does, and the same amount he would pay for the injury, but the employee would be entitled to receive an additional amount from the second injury fund which would be based upon his overall earnings. We have provided that the benefits be payable in relationship to total wages. In this way, the cost of his time of employment [sic] is spread over the entire economy and will not impose an undue burden upon a single employer." 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4040-41; see also *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154.

dent insurance protection provided for Connecticut firemen will help to resolve the ambiguity in the statutes and clarify the question whether General Statutes § 31-310 applies to a claim arising under § 7-314a. In *McDonald* v. *New Haven,* 94 Conn. 403, 413, 418, 109 A. 176, this court held that a full-time fireman, regularly paid by a municipality, did not hold his position under a "contract of service" and so was not an "employee" within the meaning of the Workmen's Compensation Act as it then existed. At the legislative session immediately following that decision, the Workmen's Compensation Act was amended so as specifically to include within the definition of an "employee" any salaried officer or paid member of any police department or fire department. His "employer" for the purposes of workmen's compensation was stated to be the municipality which paid him. See Public Acts 1921, c. 306 § 11 (now part of General Statutes § 31-275); *Lake* v. *Bridgeport,* 102 Conn. 337, 340, 128 A. 782. While this amendment offered standard protection to full-time, regularly paid firemen hired by a municipality, it apparently was not considered to cover all volunteer firemen since the 1941 General Assembly enacted chapter 206, § 1, of the 1941 Public Acts (Sup. 1941, § 70f), which applied to "all active members of such [volunteer] fire company, whether paid or not for their services, except firemen who, because of contract of employment, come under the workmen's compensation act." See General Statutes § 7-314. Although it gave insurance coverage to volunteer firemen, the benefits were less generous than under the Workmen's Compensation Act. By No. 892 of the 1967 Public Acts (General Statutes § 7-314a), the General Assembly repealed this system of compensation for volunteer firemen who, be-

cause of the lack of contract employment, did not come under the Workmen's Compensation Act and provided (§ 2) that they "shall be compensated in accordance with the provisions of chapter 568 [the Workmen's Compensation Act]" of the General Statutes.

The defendant the Aetna Insurance Company agrees that the plaintiff comes within General Statutes § 7-314a (a) (2) and that it is liable to him under that act for a portion of the compensation due him. It claims, however, that by virtue of § 31-310 it is not liable for the full award. As a matter of statutory interpretation, we must agree with the state treasurer's contention that § 31-310 has no application to claims arising under § 7-314a (a) (2).

Section 31-310 refers to an injured employee who "has worked for more than one employer." The basic question is whether the plaintiff, who admittedly worked for Western Electric, also worked for the municipality as a second employer within the meaning of § 31-310, as the Aetna argues. If the plaintiff, in his capacity as a volunteer fireman, had entered into or worked under a contract of employment with the municipality, he would have been an employee of the municipality under § 31-275[4] and been compensated solely because of the provisions of chapter 568 and not because of the provisions of § 7-314a. Public Acts 1967, No. 842, § 17 (General Statutes § 31-310) and No. 892 (General Statutes § 7-314a), pertinent to this discussion, were addressed to entirely different problems. The latter

---

[4] Section 31-275 of the General Statutes provides in part: " 'Employee' means any person who has entered into or works under any contract of service or apprenticeship with an employer . . . and shall also include any salaried officer or paid member of any police department or fire department . . . irrespective of the manner in which he is appointed or employed."

act substituted an upgrading of the benefits for volunteer firemen equated to those in the Workmen's Compensation Act and provides, inter alia, that "[f]or the purpose of this section" the wage rate shall be taken as that producing the maximum benefit rate as provided under § 31-309. General Statutes § 7-314a (b). The former act concerns the problem of the wage earner with two jobs who might be disadvantaged owing to an injury incurred on a lower paying job. There is no relationship between the two situations. The purpose of the workmen's compensation law is to provide for the workman, and it is presumed that the General Assembly acted with the knowledge that the objective in enacting such legislation was to protect the employee. *Klapproth* v. *Turner,* 156 Conn. 276, 279, 281, 240 A.2d 886.

It is significant that § 31-310, as quoted above, provides in part that the employee's "average weekly wages shall be calculated upon the basis of wages earned from all such employers" but that § 7-314a (b), in this connection, provides a different method of computation, viz., "[f]or the purpose of this section, the average weekly wage of a volunteer fireman shall be construed to be the average production wage in the state as determined by the labor commissioner under the provisions of section 31-309." It is reasonable to suppose that the legislature devised the latter method of computation to benefit and protect volunteer firemen in cases where wages actually "earned" by them, if any, might be wholly inadequate as a basis for determining their disability benefits. If we were to agree with the Aetna's contention that § 31-310 applied to this case, we would have to ignore § 7-314a (b) and instead determine the plaintiff's average weekly wage on the

basis of wages "earned" from Western Electric and the fire district. Where there are two inconsistent methods of computation such as we have in the present case, the method of computation which covers the subject matter in specific terms, herein as particularly applied to volunteer firemen, will prevail over the general language of another statute which might otherwise prove controlling. *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110, 214 A.2d 354. Since the proration provision of § 31-310 is inextricably linked to a method of computation which is incompatible with § 7-314a, it cannot be read into or reconciled with that statute and therefore is inapplicable to the facts of this case.

An historical review of the legislation pertaining to volunteer firemen suggests the conclusion that the General Assembly created a fictitious relationship of employer-employee between volunteer firemen and the municipality only to ensure the payment of benefits to volunteer firemen similar to those provided for regular firemen. The words "benefits for volunteer firemen" in the title of No. 892 of the 1967 Public Acts may be considered to determine legislative intent in construing legislation which is doubtful or ambiguous in meaning. *State* v. *Faro,* 118 Conn. 267, 272, 171 A. 660. The term "active member of a volunteer fire company," except for an inconsequential addition, has remained the same in § 7-314 since 1941. If the General Assembly had intended the relationship to exist for all purposes instead of "[f]or the purpose of this section" (§ 7-314a), it would have amended § 31-275 to include volunteer firemen within the definition of "employee" as it did in 1921 in the case of regular firemen. Although it was the purpose in § 7-314a to benefit volunteer firemen it cannot be said that

§ 31-310 provided such a benefit in their situation. On the contrary, if § 31-310 specifically applied to volunteer firemen, it could only benefit an insurance carrier. The plaintiff, who did not take an appeal in this case, cannot obtain any additional benefit from § 31-310 since he cannot receive less than the maximum due under § 7-314a (b) regardless of whether or not he had a primary job.

Payment of an award from a special fund such as the second injury and compensation assurance fund, which was established, inter alia, to assist in the payment of compensation awarded to handicapped and disadvantaged workers; General Statutes §§ 31-349—31-355; see *Everett* v. *Ingraham,* 150 Conn. 153, 158, 186 A.2d 798; should be made only in accordance with express statutory authority; 101 C.J.S., Workmen's Compensation, § 837; in order to protect that special fund and prevent unwarranted diversions of it from the specific purpose for which it was created.

Contrary to the claim of the state treasurer, now abandoned in this court, it is apparent that the workmen's compensation commissioners have jurisdiction over claims arising under § 7-314a.[5] See *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 146, 147, 93 A. 245.

The workmen's compensation commissioner had jurisdiction over the present claim, and the plaintiff, an "active member of a volunteer fire department" as the term is used in § 7-314a was not a person who "has worked for more than one employer" as the phrase appears in General Statutes § 31-310.

---

[5] The 1969 General Assembly amended § 7-314a expressly to grant jurisdiction to the workmen's compensation commission and prohibit proration of compensation benefits because of other employment of a volunteer fireman. Public Acts 1969, No. 464.

The Superior Court is advised to render judgment affirming the award of the commissioner.

No costs will be taxed in this court in favor of any party.

In this opinion KING, C. J., and THIM, J., concurred.

HOUSE, J. (dissenting). I do not agree that there is an ambiguity in these statutes or any doubt as to the expressed intention of the General Assembly where, as here, such intention is stated in clear and explicit language. "Where the language of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525; 2 Sutherland, Statutory Construction (3d Ed.) § 4502. 'Its unequivocal meaning is not subject to modification by way of construction. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207, 91 A.2d 773; *Swits* v. *Swits,* 81 Conn. 598, 599, 71 A. 782.' *General Tires, Inc.* v. *United Aircraft Corporation,* 143 Conn. 191, 195, 120 A.2d 426." *State* v. *Simmons,* 155 Conn. 502, 504, 234 A.2d 835. I believe that this court should not abandon this well-settled principle of statutory interpretation.

Section 7-314a (2) of the General Statutes (see footnote 2 in the majority opinion) expressly provided that such volunteer firemen as the plaintiff "shall be construed to be employees of the municipality for the benefit of which volunteer fire services are rendered" and "shall be compensated in accordance with the provisions of chapter 568." Chapter 568 is the chapter of the General Statutes which provides for workmen's compensation and § 31-310 (see footnote 1 in the majority opinion) is

included within that chapter. Section 31-310 clearly and unambiguously provides for the proration of workmen's compensation where an injured employee worked for more than one employer. "In this respect, the statute is unambiguous and is not therefore subject to modification by way of construction." *Little* v. *United Investors Corporation*, 157 Conn. 44, 48, 245 A.2d 567. "It is the expressed intent of the legislature which controls, and that intent is to be found in the meaning of what it says"; *Adams* v. *Vaill*, 158 Conn. 478, 483, 262 A.2d 169; and not some unexpressed or supposed state of mind of the General Assembly. See *Rivera* v. *I. S. Spencer's Sons, Inc.*, 154 Conn. 162, 166, 223 A.2d 808.

In my opinion the Superior Court should be advised to render judgment directing the commissioner to prorate the award in accordance with the formula which was precisely specified in § 31-310 of chapter 568 of the General Statutes. Under this formula a prescribed portion of the award is to be paid from the second injury and compensation assurance fund. This fund was created and is maintained by a statutory assessment against each workmen's compensation insurance carrier and self-insurer doing business in the state on the basis of a percentage of the total amount expended by each of them in payment of their liability under the provisions of the Workmen's Compensation Act. General Statutes § 31-354. In this way the burden was shifted by the General Assembly "to industry and, eventually, the public at large." *Everett* v. *Ingraham*, 150 Conn. 153, 158, 186 A.2d 798.

In this opinion ALCORN, J., concurred.