# EDWARD ANDERTON III *v.* WASTEAWAY SERVICES, LLC, ET AL.
## (AC 23431)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 31—officially released September 13, 2005

*Kevin M. Blake,* with whom, on the brief, was *Rebekah L. Sprano,* for the appellant (plaintiff).

*Opinion*

LAVERY, C. J. The plaintiff, Edward Anderton III, appeals from the decision of the workers' compensation

review board (board) reversing the determination by the workers' compensation commissioner (commissioner) that the plaintiff's injury was compensable. On appeal, the plaintiff maintains that the board improperly determined that he was not injured in the course of his employment and was not entitled to workers' compensation benefits when he sustained an injury while participating in a basketball game during working hours at the request of his employers. We agree and reverse the decision of the board.

The following facts were found by the commissioner. The plaintiff began working for the defendant WasteAway Services, LLC,[1] in August, 1999, cleaning up after baseball games and concerts held at the Bluefish Stadium in Bridgeport. He generally reported for work between 7 and 8 a.m. on the day after an event. Richard Farrell and Kevin Lynch, the owners of WasteAway Services, LLC, and the plaintiff's employers, asked the plaintiff if he would play basketball on September 3, 1999. The game would pit him and Charles Dobson, his supervisor and future brother-in-law, against the two employers and would be played on a court located in an apartment complex across the street from the stadium. The plaintiff was told that he and Dobson would be treated to lunch if they were victorious. Although he and Dobson recently had been at odds because of an unpaid debt owed by the latter to the former, they agreed to play. The plaintiff testified that he believed that he had to participate and that if he refused, his employers and Dobson would look on him unfavorably as an employee. Within fifteen minutes of the start of the game, the plaintiff sustained an injury to his left Achilles tendon.

---

[1] Harbor Yard Stadium and the second injury fund also were defendants at trial and are not involved in this appeal. In this opinion, we refer to WasteAway Services, LLC, as the defendant.

During a hearing before the commissioner, evidence was presented that the injury totally disabled the plaintiff from work from September 3 to November 18, 1999, and, according to Peter Boone, a physician, left the plaintiff with a 7 percent permanent partial disability of the left ankle. The commissioner found that the injury arose out of and in the course of the plaintiff's employment and ordered the defendant to pay the plaintiff total disability benefits and permanent partial disability benefits for 8.75 weeks. Both parties filed petitions for review. The board reversed the commissioner's finding of compensability.[2] The plaintiff has appealed from that decision.[3]

The plaintiff argues that the board disregarded the evidence supporting the commissioner's award and improperly concluded that he did not suffer a personal injury pursuant to General Statutes § 31-275 (16) (B) (i)[4] because he was participating voluntarily in a social or recreational event. Specifically, the board concluded

[2] The board did not address the plaintiff's appeal regarding unpaid medical bills.

[3] On July 23, 2002, the defendant filed for bankruptcy protection under chapter 7 of the United States Bankruptcy Code. The plaintiff was listed as a creditor in the bankruptcy case, but in accordance with 11 U.S.C. § 727 (a) (1), his debt was not discharged when the case was closed.

An argument has been raised by the second injury fund, which did not participate in the workers' compensation proceeding at the trial level, that this case is moot because the defendant is no longer in business and that should the plaintiff prevail, he would have no way to enforce a decision in his favor. We disagree. A finding of liability against a bankrupt corporate debtor can result in a debt chargeable against the entity if it ever resumes operations or against an alter ego corporation. See *N.L.R.B.* v. *Better Building Supply Corp.*, 837 F.2d 377, 379 (9th Cir. 1988); 9E Am. Jur. 2d, Bankruptcy § 3223 (2000).

[4] General Statutes § 31-275 (16) (B) provides in relevant part: " 'Personal injury' or 'injury' shall not be construed to include: (i) An injury to an employee which results from his voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity . . . ."

that there was insufficient evidence for a reasonable person to believe that there would be adverse employment related consequences if the plaintiff declined the invitation to play basketball. We agree with the plaintiff that the board ignored evidence that supported the commissioner's finding and improperly substituted its judgment for that of the commissioner.

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [plaintiff] has the burden of proving that the injury claimed arose out of the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. . . . The party seeking the award must satisfy both parts of the test. . . .

"In order to establish that [the] injury occurred in the course of employment, the [plaintiff] has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment *or doing something incidental to it.* . . . Furthermore, [t]he determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 51–52, 871 A.2d 1094, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005).

"A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to [General Statutes § 31-301] . . . . [T]he [board's] hearing of an appeal from the commissioner

is not a de novo hearing of the facts. . . . [The board] is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"To the extent that we have articulated a standard for reviewing a determination by a commissioner that an injury arose out of the employment, we have treated this issue as factual in nature and, therefore, have accorded the commissioner's conclusion the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause. A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact." (Citation omitted; internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 84 Conn. App. 220, 226, 853 A.2d 597, cert. granted on other grounds, 271 Conn. 925, 859 A.2d 579 (2004). "Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." *Brown* v. *Dept. of Correction*, supra, 89 Conn. App. 53; see also Regs., Conn. State Agencies § 31-301-8.

The commissioner found that the plaintiff's "September 3, 1999 injury arose out of and in the course of his employment, as playing basketball with his employers that day was part of his employment." The commissioner also found that the basketball game was requested by the employers, it was played during working hours and the plaintiff believed that he had to agree to play with his employers and that if he refused, Dobson and his employers would not look favorably on him as an employee.

The board held that the plaintiff bore the burden of establishing a concrete act or statement made by the employer that would have led a reasonable person to believe that there would be negative employment related consequences if the plaintiff had declined the employer's proposal for a two on two basketball game; that the plaintiff's subjective perception of a situation could not be the controlling factor in the determination of whether an activity was to be deemed voluntary; and that there must be evidence of a direct tie-in between one's employment duties or status and one's attendance at the activity. We conclude that this test is too strict.

We are persuaded that *Smith* v. *Seamless Rubber Co.*, 111 Conn. 365, 150 A. 110 (1930), "provides us with more relevant guidance. In that case, in affirming the denial of benefits, our Supreme Court stated: Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable. If the act is one for the benefit of the employer or for the mutual benefit of both, an injury arising out of it will usually be compensable; *on the other hand, if the act being performed is for the exclusive benefit of the employee so that it is a personal privilege or is one which the employer permits the employee to undertake for the benefit of some other person or for some cause apart from his own interests, an injury arising out of it will not be compensable. . . .*

"More recently, in *Spatafore* v. *Yale University*, [239 Conn. 408, 421–22, 684 A.2d 1155 (1996)], our Supreme Court stated: Consequently, when an employee has sustained an injury while traveling to and from work, but there also existed some work related recreational or social aspects, as in traveling to a union sponsored picnic, the benefit test has been applied and we have

held that that employee could fall within the [Workers' Compensation] [A]ct's coverage by demonstrating that the activity that took him outside the place and period of employment had been for the employer's benefit. . . . This independently convincing association with the employment is needed in order to overcome the initial presumption of disassociation with the employment established by the time and place factors. . . . It is clear, therefore, that absent some frequent activity, endorsed, approved or permitted by the employer, a [plaintiff] must demonstrate some benefit to his or her employer in order to satisfy the incident to employment requirement." (Emphasis in original; internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, supra, 89 Conn. App. 56.

In the present case, the activity in question was a basketball game occurring during working hours, thereby fulfilling the time requirement. The employers exercised some compulsion in that they invited the plaintiff and his supervisor to play and scheduled it during the plaintiff's work hours. It also was known that the employers were visiting the stadium because of the maintenance staff's poor performance. The plaintiff believed that if he refused to play, his employers and his supervisor would look on him unfavorably as an employee. Also, one of the employers acknowledged that the notion of playing basketball with employees was to benefit the company by boosting company morale and fostering employee loyalty.

Those facts support the commissioner's finding that the plaintiff's injury arose out of and in the course of his employment, as playing basketball with his employers that day was part of his employment. The commissioner was free to draw such a conclusion from those facts, and that finding must stand unless it resulted from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably

drawn from them. This is *not* such a case. The board used too strict of a standard for determining whether the injury arose out of voluntary participation in a recreational or social activity and improperly substituted its judgment for that of the commissioner. Therefore, the decision of the board is reversed, and the commissioner's finding of compensability must be reinstated.

The decision of the workers' compensation review board is reversed and the case is remanded with direction to reinstate the commissioner's finding of compensability and for further proceedings to address the plaintiff's appeal regarding unpaid medical bills.

In this opinion PETERS, J., concurred.

SCHALLER, J., dissenting. The pivotal issue in this case is whether the plaintiff, Edward Anderton III, has met his burden of establishing that the injury he suffered while participating in an athletic event was compensable despite the statutory exclusion to the definition of "personal injury" contained in General Statutes § 31-275 (16) (B) (i). That statutory subdivision excludes from the definition of "personal injury" any "injury to an employee which results from his voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity . . . ." The majority concludes that the workers' compensation review board (board) "ignored evidence that supported the [workers' compensation] commissioner's finding and improperly substituted its judgment for that of the commissioner." I respectfully disagree and conclude that the board appropriately applied § 31-275 (16) (B) (i) to the facts found by the commissioner, something which both the commissioner and the majority fail to do. Because I conclude that the board correctly deter-

mined that the plaintiff failed to produce sufficient evidence to establish that he sustained a compensable "personal injury," I would affirm the decision of the board.

It is well established that a plaintiff who asserts that he or she is entitled to workers' compensation benefits bears the burden of proving that his or her injury is compensable. *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 51, 871 A.2d 1094, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005). In this case, the plaintiff sought compensation for an injury that occurred during a basketball game. As such, he bore the burden of establishing that his participation in the game was *not voluntary* and that the major purpose of the game was *not social or recreational*. I agree with the board that the plaintiff failed to meet that burden. Accordingly, the statutory exclusion to the definition of "personal injury" contained in § 31-275 (16) (B) (i) bars the plaintiff's claim.

The broad definition of "personal injury" provided in § 31-275 (16) (A) is modified by § 31-275 (16) (B), which expressly states that " '[p]ersonal injury' or 'injury' shall not be construed to include" certain types of injuries. In addition to the exclusion provided in clause (i) discussed previously, clause (ii) excludes "[a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ."[1] Clause (iii) excludes "[a] mental or emotional impairment which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination . . . ."[2]

---

[1] In *Biasetti* v. *Stamford*, 250 Conn. 65, 735 A.2d 321 (1999), our Supreme Court held that the plaintiff's injury was not compensable because it failed to satisfy the requirement of General Statutes § 31-275 (16) (B) (ii) that a mental disorder be caused by a physical injury or occupational disease to be compensable.

[2] General Statutes § 31-275 (16) (A) provides that " '[p]ersonal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with this employment

The language of § 31-275 (16) (B) was added to the Workers' Compensation Act; General Statutes § 31-275 et seq.; in 1993 when the legislature enacted Public Acts 1993, No. 93-228. Prior to the addition of the exclusion contained in § 31-275 (16) (B) (i), "unless the injured worker was required to attend recreational or social activities as part of the job, it was necessary to determine to what extent the activity was for the benefit of, or in the interest of, the employer. Previously, as a general rule, if it was determined that the activity was required of the injured worker, was regularly engaged in on the employer's premises, was within the period of employment and was with the employer's approval or acquiescence, then the injury occurring under those conditions was found to be compensable.

"[Section] 31-275 (16) (B) (i) . . . now disallow[s] injuries received through *voluntary* participation in activities that are mostly social or recreational. The disallowance includes injuries received at athletic events, parties, and picnics, even if the employer pays part or all of the cost of the activity." (Emphasis in original.) A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2005) § 4.23, pp. 649–50. In other words, when an injury results from "voluntary participation" in a "social or recreational" activity, it should be disallowed pursuant to § 31-275 (16) (B) (i), regardless of whether the employer received a benefit.

The commissioner's decision made no reference whatsoever to the statute. Instead, he framed his conclusion in terms of whether the plaintiff's injury "arose out of and in the course of employment." On the basis of the finding that the plaintiff "felt he had to agree to play with his employers and that if he refused, [his supervisor] and his employers would not look favorably

and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease."

upon him as an employee," the commissioner concluded that "playing basketball with his employers that day was part of his employment." The commissioner made no findings or conclusions on the issue of whether the plaintiff's injury resulted "from his voluntary participation in any activity the major purpose of which is social or recreational . . . ." General Statutes § 31-275 (16) (B) (i).

The board, in contrast, properly applied the statutory exclusion to the definition of "personal injury" that is contained in § 31-275 (16) (B) (i) and sought to "determine whether there [was] sufficient evidence in the record to support a finding that the plaintiff's participation in the basketball game . . . was not voluntary, and/or that the major purpose of the game was not recreational or social." I find no reason to conclude that the board did "ignore the evidence" or "substitute its judgment" for that of the commissioner. Rather, the board gave appropriate deference to the commissioner's findings and properly construed the evidence in favor of the plaintiff. The board's actions were appropriate in light of its well established responsibility to review decisions made by compensation commissioners. See General Statutes § 31-280b.

"The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . [T]he board is precluded from substituting its judgment for that of the commissioner with respect

to factual determinations." (Citations omitted; internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, supra, 89 Conn. App. 53.

The board searched the record before the commissioner for evidence that supported the commissioner's conclusion. In searching the record, the board located evidence that supported the commissioner's findings and evidence that the commissioner failed to include in his findings, namely, that one of the plaintiff's employers acknowledged that the idea of a basketball game was inspired in part by an intent to boost company morale and foster employee loyalty and the fact that the plaintiff's teammate was not only a coworker and his future brother-in-law but the plaintiff's supervisor as well. The board found no evidence in the record on the issue of whether the game was not voluntary other than the employers' *request* that the plaintiff participate in the game. The board considered all the evidence and concluded that it was not sufficient because the principal *connecting link* between the game and the plaintiff's employment was the plaintiff's subjective *feeling* that he had to play.

The board established a standard or rule, which the majority considers "too strict," namely, that the plaintiff must produce *some* evidence beyond his own *subjective feeling*. As the board stated: "What is missing . . . is any concrete act or statement *by the employer* that would have led a reasonable person to think that there would be negative employment related consequences if the [plaintiff declined his employers' proposal to participate in the game]. In order for an employer to be held liable for an injury that arises out of an activity that is normally understood to be recreational or social, the employer must do more than propose the recreational event with an awareness that it might benefit employee morale. The employer must somehow acknowledge its own subjective intent or understanding

that participation in said event is connected with one's employment duties in some way. This does not necessarily require a specific statement by the employer, but the employer must have created in some manner an atmosphere whereby it was known by employees that the employer would prefer their participation in that recreational or social event, and that they would be viewed more favorably as a result. It is not enough that a claimant's subjective perception of a situation leads him to conclude that it is necessary for him to participate in such an activity. . . . There must be a direct tie-in between one's employment duties or status and one's attendance at the activity. Without this element of additional proof, a claimant cannot be said to have met his burden of establishing an exception to § 31-275 (16) (B) (i). As no such proof was offered here, we hold that the statutory exclusion to the definition of 'personal injury' for voluntary participation in social and recreational events must apply to the instant case." (Citation omitted.)

In my view, the board used an appropriate standard and gave appropriate deference to the commissioner's findings. Although the "conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts"; *Brown* v. *Dept. of Correction*, supra, 89 Conn. App. 53; in this case, the board acted properly in applying § 31-275 (16) (B) (i) after the commissioner had failed to do so, in concluding that there were insufficient facts in the record to support a finding that the plaintiff's participation in the basketball game was not voluntary and in determining that the major purpose of the game was not recreational or social. The board properly concluded that, in view of all the evidence produced, the social and recreational exclusion contained in § 31-275 (16) (B) (i) applied to bar compensability.

The majority, like the commissioner, does not address whether the plaintiff met the burden of establishing that his participation in the basketball game was *not voluntary* and that the major purpose of the game was *not social or recreational.* Instead, the majority's analysis focuses on whether the accident giving rise to the plaintiff's injury "took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment *or doing something incidental to it.*" (Emphasis in original; internal quotation marks omitted.) Id., 52.

As guidance, the majority relies on language from cases that articulate the "benefit test" that has been applied to determine whether the employee was "doing something incidental to" his or her employment when he or she was injured. Under the test, when the "act is one for the benefit of the employer or for the mutual benefit of both, an injury arising out of it will usually be compensable . . . ." *Smith* v. *Seamless Rubber Co.,* 111 Conn. 365, 368–69, 150 A. 110 (1930).

Although I agree that the benefit test is still applicable to activities not within the purview of § 31-275 (16) (B) (i), my view is that when an employee is injured while voluntarily participating in an activity, the major purpose of which is social or recreational, the statute bars compensation, regardless of whether the activity was incidental to the employment.[3] In other words, the

---

[3] In *Smith* v. *Seamless Rubber Co.,* supra, 111 Conn. 365, the defendant employer offered a voluntary vaccination program to employees and families. The plaintiff availed herself of the vaccination and, as a result, contracted an infection. Our Supreme Court affirmed the conclusion of the commissioner that the plaintiff's injury was not compensable because the plaintiff, in choosing to be vaccinated, was not fulfilling any duty of her employment or doing any act incidental to it. Although vaccination programs undoubtedly have worthwhile purposes, it cannot be said that the major purpose of a vaccination program is social or recreational. Accordingly, General Statutes § 31-275 (16) (B) (i) would not bar compensation of an injury that occurred from a vaccination, and the benefit test would therefore be appropriate.

threshold inquiry is whether there is a "personal injury" or "injury" as those terms are defined by § 31-275 (16) (B) (i). There is no need to resort to the "benefit test" to determine whether the injury occurred during an activity that was incidental to the employment when the activity is a voluntary social or recreational activity that is enumerated in § 31-275 (16) (B) (i).[4] Injuries occurring during these types of activities are excluded from the definition of "personal injury" and are therefore noncompensable under the Workers' Compensation Act.

The board appropriately applied the statutory exclusion that is contained in § 31-275 (16) (B) (i) to the definition of "personal injury" in § 31-275 (A) and properly concluded that there was insufficient evidence in the record to support a finding that the plaintiff's participation in the basketball game was not voluntary and that the major purpose of the game was not recreational or social.[5] Accordingly, I respectfully disagree with the reversal of the board's decision and would, instead, affirm the decision.

[4] See *Antignani* v. *Britt Airways, Inc.*, 58 Conn. App. 109, 117 n.8, 753 A.2d 366 (recognizing that with enactment of General Statutes § 31-275 [16] [B] [i], legislature amended Workers' Compensation Act to preclude injuries that result from voluntary participation in social or recreational activity, but stating that "*excluding those activities enumerated* in § 31-275 [16] [B] [i], the benefit test can be applied" [emphasis added]), cert. denied, 254 Conn. 911, 759 A.2d 504 (2000).

[5] See also *Sendra* v. *Board of Education*, No. 03961, CRB-06-99-01 (January 20, 2000) (injury suffered by teacher while riding mountain bike during school sponsored activity not compensable due to exclusionary language of General Statutes § 31-275 [16] [B] [i]); cf. *O'Day* v. *New Britain General Hospital*, No. 03580, CRB-06-97-04 (June 5, 1998) (injury suffered while returning from birthday luncheon for coworker not barred by § 31-275 [16] [B] [i] because participation not voluntary in that supervisor required attendance at luncheon, employee's job evaluation included comments regarding participation in such activities and major purpose of luncheons not social or recreational in that they were planned during weekly meetings and consisted primarily of work-related discussions).