DAVID HARDT *v.* TOWN OF WATERTOWN ET AL.
(AC 26094)

Lavery, C. J., and Schaller and Harper, Js.*

---

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued October 20, 2005—officially released April 25, 2006

*Edward T. Dodd, Jr.*, with whom, on the brief, was *Laura Ondrush*, for the appellant (plaintiff).

*Colette S. Gladstone*, with whom, on the brief, was *Melanie A. Dillon*, for the appellees (defendants).

*Opinion*

HARPER, J. The plaintiff, David Hardt, appeals from the decision of the workers' compensation review board (board) reversing the decision of the workers' compensation commissioner (commissioner) that his injury

was compensable under General Statutes § 7-314a.[1] The plaintiff claims that the board improperly concluded that he was not injured in the course of training for his volunteer firefighter duties and was not entitled to compensation when he sustained a knee injury while playing basketball in an open gymnasium program arranged by the Watertown volunteer fire department (department). We affirm the decision of the board.

The following facts were found by the commissioner. At all relevant times, the plaintiff was a deputy fire chief for the department. Members of the department were required to pass annual physical examinations, but there were no additional physical fitness requirements for the department. Although the department did not have a structured physical fitness program, it arranged a weekly open gymnasium basketball program for the exclusive participation of its members. The program was voluntary, but department leadership encouraged its members to participate by announcing the program over department radio and by posting information about it in each of the two department firehouses. The chief of the department characterized the basketball program as a "loosely organized physical fitness program [that] is also recreational."[2]

---

[1] General Statutes § 7-314a (a) provides in relevant part: "[A]ctive members of volunteer fire departments and active members of organizations certified as a volunteer ambulance service in accordance with section 19a-180 shall be construed to be employees of the municipality for the benefit of which volunteer fire services or such ambulance services are rendered while in training or engaged in volunteer fire duty or such ambulance service and shall be subject to the jurisdiction of the Workers' Compensation Commission and shall be compensated in accordance with the provisions of chapter 568 for death, disability or injury incurred while in training for or engaged in volunteer fire duty or such ambulance service."

[2] In addition, members who participated in the basketball program earned points toward retirement benefits. There also was evidence in the record, however, that members of the department earned points toward retirement benefits for all department sponsored events, including the basketball program and department clambakes.

On April 23, 2001, the plaintiff injured his knee while playing basketball in the department's basketball program. The chief of the department described the plaintiff's injury as "having occurred while he was participating in the voluntary fire department sponsored open gym (physical fitness program)." The plaintiff subsequently filed a claim for workers' compensation benefits. After formal hearings on October 31, 2002, and April 15 and June 23, 2003, the commissioner determined that the plaintiff was a member of the department at the time of his injury. The commissioner further concluded that the defendants, the town of Watertown and RSKCo Services, Inc., the town's insurer, were required to pay the plaintiff workers' compensation benefits because the department's basketball program constituted training pursuant to § 7-314a. The defendants appealed to the board from the commissioner's finding and award. The board reversed the commissioner's decision, concluding that the department's basketball program did not constitute training within the meaning of § 7-314a and that consequently, the plaintiff was not entitled to workers' compensation benefits. The plaintiff now appeals from the board's decision.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Where [a work-

ers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 227, 875 A.2d 485 (2005). The issue of what constitutes "training" under § 7-314a presents an issue of first impression. Accordingly, our review of the board's decision is plenary.

The plaintiff argues that the board improperly reversed the commissioner's decision. The plaintiff claims that the meaning of § 7-314a is clear and unambiguous and that as a result, the terms used in that statute should be given their plain and ordinary meaning. The plaintiff further argues that the plain and ordinary meaning of the term "training," as used in that statute, refers to fitness and physical training, rather than training for fire duties, as the board concluded. We disagree with the plaintiff.[3]

We note at the outset that, unlike other workers, volunteer firefighters are entitled to benefits under the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; only if their injury satisfies the conditions specifically set forth in § 7-314a (a).[4] Our resolu-

---

[3] The plaintiff also claims that the board acted improperly by reversing the commissioner's factual findings. The board's decision, however, was based on legal conclusions regarding the definition of the term "training" and whether the basketball game at issue constituted training in accordance with General Statutes § 7-314a (a). "The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court." (Internal quotation marks omitted.) *Emerick* v. *Kuhn*, 52 Conn. App. 724, 742, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. *Emerick* v. *United Technologies Corp.*, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999).

[4] Consequently, our cases that have considered the compensability of injuries that were sustained by employees during basketball games arranged by their employer do not apply to this case because those cases did not fall under General Statutes § 7-314a (a). See, e.g., *Anderton* v. *Wasteaway Services, LLC*, 91 Conn. App. 345, 880 A.2d 1003 (2005) (employee entitled

tion of the plaintiff's appeal is therefore guided by this provision.

Whether the plaintiff is entitled to workers' compensation benefits depends on the definition of the term "training" as used in § 7-314a (a). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). "Furthermore, we recognize that [i]f there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.) *Wannagot* v. *Shelton*, 38 Conn. App. 754, 760–61, 662 A.2d 1345, cert. denied, 235 Conn. 919, 920, 665 A.2d 908 (1995).

We thus begin with the text of § 7-314a (a), which provides in relevant part: "[A]ctive members of volunteer fire departments . . . shall be construed to be employees of the municipality for the benefit of which

to benefits for injury sustained during basketball game arranged by employer during work hours); *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 871 A.2d 1094 (employee not entitled to benefits for injury sustained during charitable basketball game on employer's property because basketball game not incidental to employment), cert. denied, 274 Conn. 914, 879 A.2d 892 (2005).

volunteer fire services . . . are rendered while *in training or engaged in volunteer fire duty* . . . and shall be subject to the jurisdiction of the Workers' Compensation Commission and shall be compensated in accordance with the provisions of [the act] for death, disability or injury incurred while *in training for or engaged in volunteer fire duty* . . . ." (Emphasis added.)

The plaintiff focuses on the first use of the term "in training" and argues that "in training" and "engaged in volunteer fire duty" are separate and distinct activities. The plaintiff claims that rather than modifying the phrase "engaged in volunteer fire duty," "in training" refers to fitness and physical training. While this may be a plausible reading of "in training" as it is first used in § 7-314a (a), it ignores the second use of the term, which is the more important use for our purposes.

The first clause of this subsection creates a presumption that active members of volunteer fire departments are employees of the municipality that they serve for purposes of § 7-314a. Our Supreme Court has recognized that this statute "created a fictitious relationship of employer-employee between volunteer firemen and the municipality . . . to ensure the payment of benefits to volunteer firemen similar to those provided for regular firemen." *Going* v. *Cromwell Fire District*, 159 Conn. 53, 60, 267 A.2d 428 (1970). Whether the plaintiff was "in training or engaged in volunteer fire duty" so as to qualify as an employee of the town for purposes of § 7-314a (a) is not an issue in this appeal, however, because the board's decision was based on the conclusion that the plaintiff's injury did not satisfy the second clause of this subsection, relating to when volunteer firefighters covered by the statute are entitled to workers' compensation benefits. Accordingly, the plaintiff's reliance on his interpretation of the first clause of § 7-314a (a) to resolve the issue before us is misplaced.

Most important to our resolution of the plaintiff's claim is the second clause in § 7-314a (a), which provides benefits to volunteer firefighters for injuries "incurred while *in training for* or engaged in volunteer fire duty . . . ." (Emphasis added.) General Statutes § 7-314a (a). Ordinary rules of English grammar dictate that the prepositional phrase "in training for" must modify a verb, noun or adjective. See Random House Webster's Unabridged Dictionary (2d Ed. 2001) (defining preposition as "any member of a class of words . . . used before nouns, pronouns and other substantives to form phrases functioning as modifiers of verbs, nouns, or adjectives"). If we were to apply the plaintiff's argument to the second clause of § 7-314a (a), thereby treating "in training for" and "engaged in volunteer fire duty" separately, the word "for" would not modify any other verb, noun or adjective. Such a construction is not only strained, but it would violate a cardinal principle of statutory construction that "the legislature [does] not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Semerzakis* v. *Commissioner of Social Services*, 274 Conn. 1, 18, 873 A.2d 911 (2005).

In addition to the grammatical structure of the phrase, the dictionary definition of the word "training" supports the board's conclusion that the term refers to training directly related to firefighting rather than to general physical fitness. The primary definition of training is "the education, instruction, or discipline of a person . . . that is being trained." Random House Webster's Unabridged Dictionary, supra. When the phrase "in training for" is read as modifying "volunteer fire duty," we understand it to mean the education, instruction or discipline of a person that is being trained in fire duties, which are defined more specifically in

General Statutes § 7-314 (a). That subsection provides in relevant part that fire duties include "duties performed while at fires, while answering alarms of fire, while answering calls for mutual aid assistance, while returning from calls for mutual aid assistance, while directly returning from fires, while at fire drills or parades, while going directly to or returning directly from fire drills or parades, while at tests or trials of any apparatus or equipment normally used by the fire department, while going directly to or returning directly from such tests or trials, while instructing or being instructed in fire duties, while answering or returning from ambulance calls where the ambulance service is part of the fire service, while answering or returning from fire department emergency calls and any other duty ordered to be performed by a superior or commanding officer in the fire department . . . ." General Statutes § 7-314 (a). Nothing in this definition persuades us that training for fire duties means training for the general physical demands of the position, as opposed to learning about and practicing the skills associated with fighting fires. Although we acknowledge that firefighting requires a certain degree of physical fitness, we are unable to conclude that members of volunteer fire departments are entitled to workers' compensation for injuries sustained while they are engaged in purely voluntary physical fitness activities.

The decision of the workers' compensation review board is affirmed.

In this opinion SCHALLER, J., concurred.

LAVERY, C. J., dissenting. I respectfully disagree with the conclusion of the majority that the participation by the plaintiff, David Hardt, in the open gymnasium program (program) arranged by the Watertown volunteer fire department (department) for the exclusive use

of its members did not constitute training for volunteer fire duty under General Statutes § 7-314a (a). Accordingly, I would reverse the decision of the workers' compensation review board and remand the matter with direction to reinstate the finding of compensability by the workers' compensation commissioner.

Under § 7-314a (a), active members of volunteer fire departments may seek compensation with the workers' compensation commission only for death, disability or injury incurred while in training for or engaged in volunteer fire duty. It is undisputed that the plaintiff was not engaged in volunteer fire duty at the time of injury. The question, then, is whether the plaintiff was training for his fire duties by participating in the program.

Among the fire duties enumerated in General Statutes § 7-314 (a) are duties performed while at fires and duties performed while answering alarms of fire. The work of a firefighter is extraordinary in its danger and exhausting in its physical demands.[1] As one firefighter observed, "[a]ll of us in this station have been on calls where somebody's been carried out of a burning building on a firefighter's back." (Internal quotation marks omitted.) *Ramos* v. *Branford,* Superior Court, judicial district of New Haven, Docket No. 407617 (December 17, 1999), aff'd, 63 Conn. App. 671, 778 A.2d 972 (2001).

It thus is axiomatic that physical fitness is a prerequisite to adequate performance of fire duties. For that reason, volunteer firefighters in Watertown, like those in other municipalities, are required to pass annual

---

[1] Consider the following example: "On March 5, 1987, the plaintiff, a captain in the Southington fire department, attempted to rescue four people trapped in a burning building. In the course of his search, the plaintiff, after injuring his ribs, exhausted his portable air supply. Then, while crawling along the floor, he rolled over and found himself lying on the body of a dead child. At this point the plaintiff believed that his death was imminent. He managed, however, to make his way out of the building to safety." *Skrzypiec* v. *Noonan,* 228 Conn. 1, 4–5, 633 A.2d 716 (1993).

physical examinations. Accordingly, I would conclude that, in certain circumstances, physical fitness programs may constitute training for volunteer fire duty. In my mind, the present case is such an instance.

The record reveals that the program was exclusive to department members. The department organized and regularly promoted the program, and it encouraged participation therein by its members. The chief of the department characterized the program as a "physical fitness program which is also recreational," and the commissioner found that the program was sponsored by the department "to promote physical fitness among [its] members . . . ." The commissioner further found that "[t]he major purpose of the program was not recreational." Under these circumstances, I would conclude that participation in this particular physical fitness program constitutes training for volunteer fire duty. Because the plaintiff sustained his injury while participating in the program, the protections of § 7-314a (a) should apply.